# JOY WARE *v.* STATE OF CONNECTICUT
## (AC 28600)

Lavine, Beach and Dupont, Js.

Argued April 27—officially released November 24, 2009

*Beth Z. Margulies*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the appellant (defendant).

*Denise Bevza*, for the appellee (plaintiff).

*Opinion*

BEACH, J. The defendant, the state of Connecticut, appeals from the judgment of the trial court denying its motion to dismiss the complaint of the plaintiff, Joy Ware. The defendant claims that the court improperly denied its motion to dismiss because (1) sovereign immunity bars the plaintiff's claims of wrongful termination and breach of implied contract, (2) the plaintiff failed to exhaust administrative remedies as to several of her claims brought pursuant to General Statutes § 46a-60 and (3) sovereign immunity bars claims for punitive damages against the state. We agree and reverse the judgment of the trial court.

The following facts are relevant to our resolution of the defendant's appeal. On July 23, 2004, the plaintiff was transferred from a position with the department of children and families to a position with the office of victim services. The department of children and families is an agency within the executive branch of the state, and the office of victim services is within the judicial branch. In December, 2004, the plaintiff informed her supervisors that she was pregnant. On April 8, 2005, the plaintiff was discharged from her position at the office of victim services.

The plaintiff brought this action against the defendant by way of a three count complaint. In count one, the plaintiff alleged that the defendant improperly terminated her employment and failed to rehire her in violation of General Statutes §§ 5-196, 5-236 and 5-239 and "Connecticut Regulations § 5-239 (b) . . . ."[1] The plaintiff alleged that the defendant improperly subjected her to a nine month probationary period rather than the

---

[1] There is no § 5-239 (b) of the Regulations of Connecticut State Agencies. Sections 5-239-1 and 5-239-2 of the Regulations of Connecticut State Agencies regulate employee transfers, but the plaintiff does not specify to which of these she may be referring.

six month period provided in the State Personnel Act (personnel act), General Statutes § 5-193 et seq. The plaintiff also alleged that the defendant violated § 5-236 by failing to place her on the reemployment list and that the defendant's discriminatory conduct created a "hostile and offensive work environment . . . ." In count two, the plaintiff alleged employment discrimination in violation of § 46a-60 (a) (1), (4), (5) and (7), as well as the creation of a "hostile and offensive work environment . . . ." In count three, the plaintiff alleged that the defendant "breached its express and implied contractual commitments to [her] by terminating [her] employment, without cause," and "breached the covenant of good faith and fair dealing by failing to take [the] rights afforded her . . . seriously, and failing to place safeguards in the workplace that would prevent the [d]efendant from retaliating against [her]." Additional facts will be set forth as necessary.

We begin by noting the standard that this court applies in reviewing a trial court's ruling on a motion to dismiss. "A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. . . . [O]ur review of the trial court's ultimate legal conclusion and resulting [denial] of the motion to dismiss will be de novo." (Internal quotation marks omitted.) *State* v. *Welwood*, 258 Conn. 425, 433, 780 A.2d 924 (2001). Factual findings underlying the court's decision, however, will not be disturbed unless they are clearly erroneous. See, e.g., Practice Book § 60-5; *State* v. *Wiggs*, 60 Conn. App. 551, 553, 760 A.2d 148 (2000). The determination as to which statutory and regulatory scheme governed the plaintiff's employment and whether sovereign immunity bars the plaintiff's claims are questions of law. "The question of whether a particular statute . . . applies to a given state of facts is a question of

statutory interpretation . . . . Statutory interpretation presents a question of law for the court. . . . Our review is, therefore, plenary." (Internal quotation marks omitted.) *Atlantic Mortgage & Investment Corp.* v. *Stephenson*, 86 Conn. App. 126, 131–32, 860 A.2d 751 (2004).

I

The defendant first claims that the court improperly denied its motion to dismiss as to the counts of the complaint alleging wrongful termination and breach of implied contract because the doctrine of sovereign immunity bars those claims.[2] We agree.

"It is a well-established rule of the common law that a state cannot be sued without its consent. . . . A sovereign is exempt from suit, not because of any formal conception or obsolete theory, but on the logical and practical ground that there can be no legal right as against the authority that makes the law on which the right depends. . . . The practical and logical basis of the doctrine is today recognized to rest on this principle and on the hazard that the subjection of the state and federal governments to private litigation might constitute a serious interference with the performance of their functions and with their control over their respective

---

[2] "The general rule is that the denial of a motion to dismiss is an interlocutory ruling and, therefore, is not a final judgment for purposes of appeal. . . . The denial of a motion to dismiss based on a colorable claim of sovereign immunity, by contrast, is an immediately appealable final judgment because the order or action so concludes the rights of the parties that further proceedings cannot affect them." (Internal quotation marks omitted.) *Conboy* v. *State*, 292 Conn. 642, 645 n.5, 974 A.2d 669 (2009). "[U]nless the state is permitted to appeal a trial court's denial of its motion to dismiss, filed on the basis of a colorable claim of sovereign immunity, the state's right not to be required to litigate the claim filed against it would be irretrievably lost." *Shay* v. *Rossi*, 253 Conn. 134, 165, 749 A.2d 1147 (2000), overruled in part on other grounds by *Miller* v. *Egan*, 265 Conn. 301, 325, 828 A.2d 549 (2003).

instrumentalities, funds, and property." (Citations omitted; internal quotation marks omitted.) *Martinez* v. *Dept. of Public Safety*, 263 Conn. 74, 78–79, 818 A.2d 758 (2003).

Our Supreme Court has held that "a plaintiff seeking to circumvent the doctrine of sovereign immunity must show that: (1) the legislature, either expressly or by force of a necessary implication, statutorily waived the state's sovereign immunity . . . or (2) in an action for declaratory or injunctive relief, the state officer or officers against whom such relief is sought acted in excess of statutory authority, or pursuant to an unconstitutional statute." (Internal quotation marks omitted.) *Lyon* v. *Jones*, 291 Conn. 384, 397, 968 A.2d 416 (2009). We will address each of these exceptions in turn.

A

With regard to the first exception to sovereign immunity, we must first determine which statutory scheme governed the plaintiff's employment with the defendant before we can determine whether sovereign immunity has been waived. The plaintiff argues that her employment with the defendant was governed by the personnel act. In particular, the plaintiff refers to § 5-196 (20), which defines "permanent employee" as "an employee holding a position in the classified service under a permanent appointment or an employee holding a position in unclassified service who has served in such a position for a period of more than six months . . . ." Section 5-196 (21) defines " '[p]ermanent position,' " with limited exceptions that are not applicable here, as "any position in the classified service which requires or which is expected to require the services of an incumbent without interruption for a period of more than six months . . . ." Section 5-196 (25) defines " '[s]tate service' " as "occupancy of any office or position or employment in

the service of the state, but not of local governmental subdivisions thereof, for which compensation is paid."

The defendant argues that the plaintiff's employment is governed by General Statutes § 51-12 rather than the personnel act. Section 51-12 provides in relevant part: "(a) With the exception of those employees whose compensation is fixed by statute, the judges of the Supreme Court shall, from time to time, prescribe the compensation plan for all employees of the Supreme Court and the Superior Court and other employees of the Judicial Department. (b) The compensation plan may include regulations concerning employee hiring and separation practices, sick leave, vacation leave, absences with and without pay, longevity payments, increments and all other matters regarding personnel policies and procedures. The judges of the Supreme Court shall establish such job classifications as they deem necessary as part of the plan. . . ."

The defendant argues that within the powers prescribed by § 51-12, the judicial branch has promulgated its own personnel policies and procedures, including a nine month probationary period. In particular, the defendant refers to the judicial branch's administrative policies and procedures manual (manual), § 207, entitled "Probationary Periods," which provides in pertinent part: "Persons hired into permanent positions serve a probationary period, which is deemed an extension of the hiring process. Probationary periods are designed to provide the employee with an opportunity to demonstrate ability, interest, and skill. . . . The length of the probationary periods for bargaining unit employees are set forth in the Probationary Period articles of the collective bargaining agreements in a separate volume of this manual." Section 1 (a) of article XI, entitled "Probationary Period," of the collective bargaining agreement between the judicial branch and the union of professional judicial employees AFT/AFT-CT,

AFL-CIO provides in pertinent part: "[P]ermanent status in a duly authorized full-time or part-time position will be attained by the employee after the conclusion of a satisfactory probationary period of *nine (9) months* of continuous employment . . . ." (Emphasis added.)

The plaintiff's argument that her employment was governed by the personnel act rests on the broad language of that act, which speaks of employees in the "state service" and does not distinguish between the different branches of the state government. General Statutes § 5-194 provides in relevant part: "This chapter shall be so construed and administered as to provide a uniform and equitable system of personnel administration of employees in the state service. . . ." As stated previously, § 5-196 (25) defines " '[s]tate service' " as "occupancy of any office or position or employment in the service of the state, but not of local governmental subdivisions thereof, for which compensation is paid." On the basis of this language, the plaintiff asserts that "[the defendant's] opinion that it does not have to abide by [provisions of the personnel act] is preposterous." We disagree.

It is a "well-settled principle of [statutory] construction that specific terms covering [a] given subject matter will prevail over general language of . . . another statute which might otherwise prove controlling." (Internal quotation marks omitted.) *Board of Education* v. *State Board of Education*, 278 Conn. 326, 338, 898 A.2d 170 (2006). "When statutes relate to the same subject matter, they must be read together and specific terms covering the given subject matter will prevail over other general language of the same or another statute which might otherwise prove controlling." (Internal quotation marks omitted.) *Zanoni* v. *Lynch*, 79 Conn. App. 309, 320 n.4, 830 A.2d 304, cert. denied, 266 Conn. 929, 837 A.2d 804 (2003).

Here, the specific terms of § 51-12 prevail over the more general terms of the personnel act. Section 51-12 specifically instructs the "judges" of the Supreme Court to "prescribe the compensation plan for all employees of the Supreme Court and the Superior Court and other employees of the Judicial Department"; General Statutes § 51-12 (a); including regulations concerning employee hiring and separation practices and "all other matters regarding personnel policies and procedures. . . ." General Statutes § 51-12 (b). It not only enables the "judges" of the Supreme Court to do so, but directs them to do so, as is evidenced by the use of the word "shall." See General Statutes § 51-12 (a) ("[w]ith the exception of those employees whose compensation is fixed by statute, the judges of the Supreme Court *shall*, from time to time, prescribe the compensation plan for all employees of the Supreme Court and the Superior Court and other employees of the Judicial Department" [emphasis added]); see also *Lostritto* v. *Community Action Agency of New Haven, Inc.*, 269 Conn. 10, 20, 848 A.2d 418 (2004) ("[i]t is especially relevant that the legislature chose to use the word 'shall' . . . in contrast to the more permissive, 'may' ").

In contrast to § 51-12, the personnel act does not refer to a specific branch of the state government and speaks more broadly of "state service." Section 51-12 clearly instructs the judges of the Supreme Court to prescribe employment regulations and policies for employees of the judicial branch apart from those set forth in the personnel act. We conclude that the plaintiff's employment with the defendant was governed by § 51-12 and the applicable policies as expressed in regulations and the manual, which expressly incorporates the nine month probationary period in the union contract.[3]

[3] The plaintiff does not allege that she was a member of a union, and the record is silent in that regard.

Having determined that the plaintiff's employment was governed by § 51-12, and the nine month probationary period enacted pursuant to that section, we must next determine whether that section either expressly or by force of a necessary implication statutorily waives the state's sovereign immunity. See *Lyon* v. *Jones*, supra, 291 Conn. 397. This is a question of statutory construction over which we exercise plenary review. See, e.g., *Dept. of Transportation* v. *White Oak Corp.*, 287 Conn. 1, 7, 946 A.2d 1219 (2008). "The principles that govern statutory construction are well established. When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *Friezo* v. *Friezo*, 281 Conn. 166, 181–82, 914 A.2d 533 (2007).

In making the determination whether a statute waives sovereign immunity, our Supreme Court has recognized "the well established principle that statutes in derogation of sovereign immunity should be strictly construed.

. . . Where there is any doubt about their meaning or intent they are given the effect which makes the least rather than the most change in sovereign immunity." (Internal quotation marks omitted.) *DaimlerChrysler Corp.* v. *Law*, 284 Conn. 701, 712, 937 A.2d 675 (2007). With this standard in mind, we conclude that § 51-12 does not expressly waive the state's sovereign immunity. The statute directs the creation of "the compensation plan for all employees of the Supreme Court and the Superior Court and other employees of the Judicial Department"; General Statutes § 51-12 (a); and then sets out what that may include. There is no express waiver of sovereign immunity.

Section 51-12 also does not waive sovereign immunity by force of necessary implication. Our Supreme Court has interpreted "necessary implication" to mean "[t]he probability . . . must be apparent, and not a mere matter of conjecture; but . . . necessarily such that from the words employed an intention to the contrary cannot be supposed." (Internal quotation marks omitted.) *Mahoney* v. *Lensink*, 213 Conn. 548, 558 n.14, 569 A.2d 518 (1990); *Weed* v. *Scofield*, 73 Conn. 670, 678, 49 A. 22 (1901). Nothing in the text of the statute itself or its relationship to other statutes leads us to conclude that § 51-12 waives sovereign immunity by force of necessary implication. There is no evidence that the statute even creates a cause of action against the state, let alone impliedly waives sovereign immunity such that an intention to the contrary cannot be supposed.

B

We next address the second exception to the state's sovereign immunity, that being whether, in an action for declaratory or injunctive relief, the state officer or officers against whom such relief is sought acted in excess of statutory authority or pursuant to an unconstitutional statute. See *Lyon* v. *Jones*, supra, 291 Conn. 397.

"In those cases in which it is alleged that the defendant officer is proceeding . . . in excess of his statutory authority, the interest in the protection of the plaintiff's right to be free from the consequences of such action outweighs the interest served by the sovereign immunity doctrine. . . . In such instances, the need to protect the government simply does not arise and the government cannot justifiably claim interference with its functions . . . . Where [however] no substantial claim is made that the defendant officer is acting pursuant to an unconstitutional enactment or in excess of his statutory authority, the purpose of the sovereign immunity doctrine requires dismissal of the suit for want of jurisdiction." (Citations omitted; internal quotation marks omitted.) *Shay* v. *Rossi*, 253 Conn. 134, 169, 749 A.2d 1147 (2000), overruled in part on other grounds by *Miller* v. *Egan*, 265 Conn. 301, 325, 828 A.2d 549 (2003). Those cases holding that sovereign immunity does not bar an action brought against a state employee in his official capacity if the complaint alleges that the employee acted in excess of his statutory authority are based on the rationale that "[s]uch conduct on the part of state officials would exceed their powers and, as such, would not be the conduct of the state of Connecticut." *Simmons* v. *Parizek*, 158 Conn. 304, 307, 259 A.2d 642 (1969).

In the present case, not only is there no substantial allegation that a state officer was acting pursuant to an unconstitutional enactment or in excess of his statutory authority, there is no allegation against a state officer at all. The sole defendant in this action is the state of Connecticut. The plaintiff has not made any claims against any state employees in their official capacity. As such, the rationale behind this exception to sovereign immunity cannot apply to the plaintiff's claims against the state, and "the 'in excess of statutory authority' analysis is irrelevant." *Hanna* v. *Capitol Region Mental*

*Health Center,* 74 Conn. App. 264, 271 n.7, 812 A.2d 95 (2002). Thus the second exception does not apply.

Our conclusion that neither exception to sovereign immunity applies to the claims in this case, which are governed by § 51-12, leads us to conclude further that the court improperly denied the defendant's motion to dismiss as to counts one and three of the plaintiff's complaint. Count one was based on the allegation that the defendant improperly separated the plaintiff from her employment because she was no longer within the probationary period for new employees set forth under the personnel act. We concluded as a matter of law that the plaintiff's employment was instead governed by § 51-12 and that in this case, sovereign immunity barred claims against the state under this statute. Thus, the court improperly denied the defendant's motion to dismiss as to count one.

We also conclude that the court improperly denied the defendant's motion to dismiss as to count three, which was based on the theory of implied contract. "[S]tate employees do not have contractual employment rights absent a clear and unambiguous expression of legislative intent to the contrary. . . . Thus, state employees serve by appointment, and their entitlement to pay and other benefits must be determined by reference to the statutes and regulations governing [compensation], rather than to ordinary contract principles." (Citations omitted; internal quotation marks omitted.) *Chotkowski* v. *State,* 240 Conn. 246, 267, 690 A.2d 368 (1997). Accordingly, the plaintiff can prevail on her contract claim only if she can establish that the legislature intended to bind the state contractually under the statutory scheme pursuant to which she was appointed. See id. The plaintiff refers to nothing in § 51-12 or elsewhere in our laws and regulations to support her claim of implied contractual entitlement. Thus, her employment was governed only by § 51-12 and the policies

and regulations adopted pursuant to it, but not by any implied contract. Because we concluded previously that sovereign immunity bars claims brought pursuant to § 51-12, the court improperly denied the defendant's motion to dismiss as to count three.

## II

The defendant's next claim pertains to the plaintiff's allegations of employment discrimination in violation of § 46a-60 (a) (1), (4), (5) and (7) contained in count two of her complaint and the allegation of a "hostile and offensive work environment" contained in counts one and two. The defendant claims that the court should have granted its motion to dismiss the plaintiff's claims brought pursuant to § 46a-60 (a) (4) and (5) and her "hostile and offensive work environment" claim[4] on the ground that the plaintiff had failed to exhaust her administrative remedies as to those claims by obtaining a release of jurisdiction from the commission on human rights and opportunities (commission). We agree.

[4] The defendant raises a claim on appeal with respect to the plaintiff's "claim" in counts one and two of a "hostile and offensive work environment . . . ." The plaintiff's complaint does not specifically allege a hostile and offensive work environment as a separate cause of action. See *Boone* v. *William W. Backus Hospital*, 272 Conn. 551, 559, 864 A.2d 1 (2005) ("[T]he interpretation of pleadings is always a question of law for the court . . . . Our review of the trial court's interpretation of the pleadings therefore is plenary." [Internal quotation marks omitted.]).

We do not express an opinion as to whether, as pleaded, it constitutes a complete cause of action. Counts one and two of the plaintiff's complaint, however, do appear to contain allegations of the creation of a "hostile and offensive work environment" in the context of recognized causes of action. These allegations arise within the context of a released claim.

That is to say, to the extent that the allegations arise within the context of count one or within the portion of count two that alleges a violation of § 46a-60 (a) (4) or (5), they may not be considered in this action because those claims are barred by sovereign immunity. To the extent that the allegations arise within the portion of count two alleging a violation of § 46a-60 (a) (1) or (7), the defendant made no claim on appeal challenging the court's denial of its motion to dismiss as to those portions of count two.

## A

We first address the threshold jurisdictional issue of whether the defendant has appealed from a final judgment. Following oral argument before this court, we ordered supplemental briefs addressing this jurisdictional issue. The defendant argues that its "failure to exhaust" argument presents a colorable claim of sovereign immunity because General Statutes § 46a-100 provides a waiver of sovereign immunity only to those persons who have received a release of jurisdiction. We agree.

As we previously have noted, "[t]he general rule is that the denial of a motion to dismiss is an interlocutory ruling and, therefore, is not a final judgment for purposes of appeal. . . . The denial of a motion to dismiss based on a colorable claim of sovereign immunity, by contrast, is an immediately appealable final judgment because the order or action so concludes the rights of the parties that further proceedings cannot affect them." (Internal quotation marks omitted.) *Conboy* v. *State*, 292 Conn. 642, 645 n.5, 974 A.2d 669 (2009).

The defendant's motion to dismiss count two, which alleged violations of § 46a-60, was based on the plaintiff's failure to exhaust administrative remedies under § 46a-100. The motion presents a colorable claim of sovereign immunity. "[Section] 46a-100 represents an unambiguous waiver of sovereign immunity, authorizing actions against the state for alleged discriminatory employment practices in violation of § 46a-60." *Lyon* v. *Jones*, supra, 291 Conn. 397. The plain language[5] of

---

[5] As we have previously stated, "[s]tatutory construction is a question of law and, therefore, our review is plenary. . . . The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Rios* v. *CCMC Corp.*, 106 Conn. App. 810, 815, 943 A.2d 544 (2008). As stated previously, "statutes in derogation of sovereign immunity

§ 46a-100 dictates that the waiver of sovereign immunity provided by that statute is predicated on the plaintiff's first obtaining a release of jurisdiction from the commission and is limited to such situations.[6] Section 46a-100 provides in relevant part that "[a]ny person who has timely filed a complaint with the [commission] . . . and who has obtained a release from the commission . . . may also bring an action in the superior court for the judicial district in which the discriminatory practice is alleged to have occurred or in which the respondent transacts business, except any action involving a state agency or official may be brought in the superior court for the judicial district of Hartford." The requirement that a plaintiff must first obtain a release of jurisdiction before bringing an action in Superior Court is codified at General Statutes § 46a-101 (a), which provides that "[n]o action may be brought in accordance with section 46a-100 unless the complainant has received a release from the commission in accordance with the provisions of this section."

Accordingly, "§ 46a-100 expressly waives sovereign immunity and creates a cause of action in the Superior Court for claims alleging a violation of § 46a-60 *over which the commission has released jurisdiction.*" (Emphasis added; internal quotation marks omitted.) *Lyon* v. *Jones,* supra, 291 Conn. 400. Thus, only a plaintiff who has first obtained a release is entitled to take advantage of the state's statutory waiver of sovereign immunity. Because the principles of sovereign immunity and exhaustion of administrative remedies are intertwined, the defendant's motion to dismiss portions

should be strictly construed. . . . Where there is any doubt about their meaning or intent they are given the effect which makes the least rather than the most change in sovereign immunity." (Internal quotation marks omitted.) *Chatterjee* v. *Commissioner of Revenue Services,* 277 Conn. 681, 691, 894 A.2d 919 (2006).

[6] See *Columbia Air Services, Inc.* v. *Dept. of Transportation,* 293 Conn. 342, 349–53, 977 A.2d 636 (2009).

of count two and the "hostile and offensive" work environment claim was based on a colorable claim of sovereign immunity. Accordingly, the court's denial of the defendant's motion to dismiss as to these portions of the plaintiff's complaint constitutes an immediately appealable final judgment.

B

We now turn to the merits of the defendant's claim. "Because the exhaustion [of administrative remedies] doctrine implicates subject matter jurisdiction, [the court] must decide as a threshold matter whether that doctrine requires dismissal of the [plaintiff's] claim. . . . The Superior Court has no jurisdiction to act where there is an adequate administrative remedy that has not been exhausted." (Citations omitted; internal quotation marks omitted.) *Flanagan* v. *Commission on Human Rights & Opportunities*, 54 Conn. App. 89, 91–92, 733 A.2d 881, cert. denied, 250 Conn. 925, 738 A.2d 656 (1999). Thus, our resolution of the defendant's claim turns on whether the complaint filed with the commission, in which the plaintiff made claims under § 46a-60 (1) and (7), satisfied the exhaustion requirement as to the other claims contained in her complaint before the Superior Court.

To resolve the defendant's claim, we turn to federal precedent. Our Supreme Court has determined that when an overlap between state and federal law is deliberate, federal precedent is particularly persuasive. *Commission on Human Rights & Opportunities* v. *Savin Rock Condominium Assn., Inc.*, 273 Conn. 373, 386, 870 A.2d 457 (2005). Additionally, we have been reluctant to interpret state statutory schemes in a manner at odds with federal schemes on which they are modeled. See, e.g., *Blasko* v. *Commissioner of Revenue Services*, 98 Conn. App. 439, 456, 910 A.2d 219 (2006) (finding "highly significant" that federal tax code permitted plaintiffs to

claim credit, while interpretation of state credit scheme, which sought "to mirror the federal credit scheme," disallowed application of any credit).

In drafting and modifying the Connecticut Fair Employment Practices Act (fair employment act), General Statutes § 46a-51 et seq., our legislature modeled that act on its federal counterpart, Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e et seq., and it has sought to keep our state law consistent with federal law in this area. See, e.g., *Commission on Human Rights & Opportunities* v. *Savin Rock Condominium Assn., Inc.*, supra, 273 Conn. 385 ("[w]ith the intent of creating a state antidiscrimination housing statute consistent with its federal counterpart, the legislature adopted [General Statutes] § 46a-64c and related provisions"). Accordingly, in matters involving the interpretation of the scope of our antidiscrimination statutes, our courts consistently have looked to federal precedent for guidance. *Brittell* v. *Dept. of Correction*, 247 Conn. 148, 164, 717 A.2d 1254 (1998) ("[i]n defining the contours of an employer's duties under our state antidiscrimination statutes, we have looked for guidance to federal case law interpreting Title VII . . . the federal statutory counterpart to § 46a-60"); *Malasky* v. *Metal Products Corp.*, 44 Conn. App. 446, 454, 689 A.2d 1145 ("[a]lthough the [federal precedent] was concerned primarily with [Equal Employment Opportunity Commission (EEOC)] filing requirements, the same rationale applies to the requirements of the [commission]"), cert. denied, 241 Conn. 906, 695 A.2d 539 (1997).

The United States Court of Appeals for the Second Circuit "has recognized that [a] claim is considered reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made. . . . In this inquiry, the focus should be on the factual allegations made in the [EEOC] charge itself, describing the discriminatory conduct about

which a plaintiff is grieving. . . . The central question is whether the complaint filed with the EEOC gave that agency adequate notice to investigate discrimination on both bases. . . . The reasonably related exception to the exhaustion requirement is essentially an allowance of loose pleading and is based on the recognition that EEOC charges frequently are filled out by employees without the benefit of counsel and that their primary purpose is to alert the EEOC to the discrimination that a plaintiff claims [he] is suffering." (Citations omitted; internal quotation marks omitted.) *Williams* v. *Housing Authority*, 458 F.3d 67, 70 (2d Cir. 2006). This determination will in large part rest on our interpretation of the plaintiff's pleadings, which "is always a question of law for the court . . . ." (Internal quotation marks omitted.) *Votre* v. *County Obstetrics & Gynecology Group*, 113 Conn. App. 569, 576, 966 A.2d 813, cert. denied, 292 Conn. 911, 973 A.2d 661 (2009).

In the present case, the plaintiff's complaint to the commission alleged, inter alia, violations of § 46a-60 (a) (1) and (7).[7] In her complaint to the Superior Court, the plaintiff alleged violations of § 46a-60 (a) (1), (4), (5) and (7). Section 46a-60 (a) (1), as is pertinent to the facts of this case, makes it discriminatory to refuse to hire or to discharge an employee because of the employee's sex.[8] Section 46a-60 (a) (7) makes it discrim-

---

[7] On her commission complaint form, the plaintiff marked boxes regarding discrimination on the basis of gender and pregnancy. There is no reference to any other basis.

[8] General Statutes § 46a-60 (a) provides in relevant part: "It shall be a discriminatory practice in violation of this section:

"(1) For an employer, by the employer or the employer's agent, except in the case of a bona fide occupational qualification or need, to refuse to hire or employ or to bar or to discharge from employment any individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment because of the individual's race, color, religious creed, age, sex, marital status, national origin, ancestry, present or past history of mental disability, mental retardation, learning disability or physical disability, including, but not limited to, blindness . . . ."

inatory to discharge or refuse to reinstate an employee because of her pregnancy.[9] Section 46a-60 (a) (4) provides that it shall be a discriminatory practice "[f]or any person, employer, labor organization or employment agency to discharge, expel or otherwise discriminate against any person because such person has opposed any discriminatory employment practice or because such person has filed a complaint or testified or assisted in any proceeding" before the commission. Section 46a-60 (a) (5) provides that it shall be a discriminatory practice "[f]or any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any act declared to be a discriminatory employment practice or to attempt to do so . . . ." The plaintiff's complaint in the Superior Court also appeared to allege the creation of a "hostile and offensive work environment . . . ."

---

[9] General Statutes § 46a-60 (a) provides in relevant part: "It shall be a discriminatory practice in violation of this section . . .

"(7) For an employer, by the employer or the employer's agent: (A) To terminate a woman's employment because of her pregnancy; (B) to refuse to grant to that employee a reasonable leave of absence for disability resulting from her pregnancy; (C) to deny to that employee, who is disabled as a result of pregnancy, any compensation to which she is entitled as a result of the accumulation of disability or leave benefits accrued pursuant to plans maintained by the employer; (D) to fail or refuse to reinstate the employee to her original job or to an equivalent position with equivalent pay and accumulated seniority, retirement, fringe benefits and other service credits upon her signifying her intent to return unless, in the case of a private employer, the employer's circumstances have so changed as to make it impossible or unreasonable to do so; (E) to fail or refuse to make a reasonable effort to transfer a pregnant employee to any suitable temporary position which may be available in any case in which an employee gives written notice of her pregnancy to her employer and the employer or pregnant employee reasonably believes that continued employment in the position held by the pregnant employee may cause injury to the employee or fetus; (F) to fail or refuse to inform the pregnant employee that a transfer pursuant to subparagraph (E) of this subdivision may be appealed under the provisions of this chapter; or (G) to fail or refuse to inform employees of the employer, by any reasonable means, that they must give written notice of their pregnancy in order to be eligible for transfer to a temporary position . . . ."

The central question is whether the complaint filed with the commission gave that agency adequate notice to investigate discrimination claimed in the present action. See *Williams* v. *Housing Authority*, supra, 458 F.3d 70. In her complaint to the commission, the plaintiff alleged that during her employment she "received no verbal or written warnings for poor performance or attendance" and that the defendant's "reason for terminating [her] employment, and not returning [her] to [her] previous position, was a pretext for discrimination based on [her] sex . . . and pregnancy." In her complaint before the Superior Court, the plaintiff alleged that she informed representatives of the defendant that she was pregnant and was discharged "without just cause" approximately four months later. She also alleged that the defendant "retaliated" against her but does not allege any specific retaliatory acts in her complaint and does not distinguish between discrimination committed by the defendant and retaliation.[10] The plaintiff's "hostile and offensive work environment" claim, to the extent that it may be intended to constitute a cause of action; see footnote 4 of this opinion; consists of the allegation that the defendant's "discrimination and retaliation, created an intimidating, oppressive, hostile and offensive work environment, which interfered with [the plaintiff's] emotional well-being."

We conclude that the plaintiff's claims under § 46a-60 (a) (4) and (5) and her "hostile and offensive work environment" claim[11] are not so closely related to the allegations in her complaint to the commission that they reasonably would have been investigated by the commission. With regard to the claim under § 46a-60

[10] In fact, the entirety of the plaintiff's retaliation claim is composed of the allegation that the defendant "retaliated" against her, without any supporting facts, and the citation to § 46a-60 (a) (4).

[11] Again, it is not clear whether the hostile work environment "claim" is intended to constitute an allegation of prohibited conduct or an item of damages, i.e., a result of previously alleged prohibited conduct.

(a) (4), nothing in the complaint to the commission gave that agency adequate notice to investigate a claim for retaliation. It alleges that the plaintiff was discharged because of her sex and because she was pregnant. Only after her discharge did she bring the claim before the commission. There are no allegations that she opposed any discriminatory practice or filed a complaint alleging any discriminatory practice prior to her discharge or was subject to any otherwise discriminatory treatment for doing so. Next, with regard to the claim brought under § 46a-60 (a) (5), nothing in the complaint to the commission alleged or could reasonably be interpreted to have alleged that an individual aided, abetted, incited, compelled or coerced the doing of any discriminatory act. The plaintiff's failure to allege any facts underlying this claim in her complaint to the Superior Court also contributes to our conclusion that this claim is not reasonably related to those before the commission. Finally, nothing in the complaint to the commission gave that agency adequate notice specifically to investigate a vague claim of a hostile work environment. The plaintiff made no specific allegations relating to a sexual harassment hostile work environment claim in her complaint to the commission. We also cannot interpret any of the plaintiff's allegations in the complaint to the commission to allege such a claim.[12]

We conclude, therefore, that the plaintiff's complaint filed with the commission did not satisfy the exhaustion requirement as to those claims brought under § 46a-60 (a) (4) and (5) contained in count two of her complaint and her "hostile and offensive work environment" claim

[12] It may be argued that an agency investigating a complaint of gender discrimination might reasonably consider the work environment. To the extent that a "hostile and offensive work environment" may have been caused by gender discrimination and thus relates perhaps to damages, the issue has been preserved by its presentation to the commission and the release of jurisdiction issued by the commission.

contained in counts one and two. As a result, the plaintiff could not obtain, as to those claims, a release of jurisdiction pursuant to § 46a-100 and, therefore, is not entitled to take advantage of the state's statutory waiver of sovereign immunity.

The court improperly denied the defendant's motion to dismiss as to those claims brought under § 46a-60 (a) (4) and (5) contained in count two of the plaintiff's complaint and her "hostile and offensive work environment" claim contained in counts one and two.

## III

The defendant's final claim is that the court improperly determined that sovereign immunity did not bar the plaintiff's claim for punitive damages pursuant to General Statutes § 46a-104.[13] We agree.

We again note that the question of whether § 46a-104 either expressly or by force of a necessary implication statutorily waives the state's sovereign immunity is a question of statutory construction over which we exercise plenary review. See, e.g., *Dept. of Transportation* v. *White Oak Corp.*, supra, 287 Conn. 7. In its memorandum of decision, the court succinctly concluded: "[The] language [of § 46a-104] is sufficiently broad to include punitive damages." Section 46a-104 provides: "The court may grant a complainant in an action brought in accordance with section 46a-100 such legal and equitable relief which it deems appropriate including, but not limited to, temporary or permanent injunctive relief, attorney's fees and court costs." The defendant argues that sovereign immunity bars the recovery of punitive damages in actions against the state.[14]

---

[13] See footnote 2 of this opinion.

[14] The defendant also questions whether § 46a-104 even permits the awarding of punitive damages at all, whether against the state or a private party. We need not address this argument because we conclude that sovereign immunity bars the recovery of punitive damages against the state under § 46a-104.

Our Supreme Court recently held that "§ 46a-100 represents an unambiguous waiver of sovereign immunity, authorizing actions against the state for alleged discriminatory employment practices in violation of § 46a-60." *Lyon* v. *Jones*, supra, 291 Conn. 397. Although the Supreme Court concluded in *Lyon* that § 46a-100[15] waives sovereign immunity for claims brought under § 46a-60, "a waiver of immunity from suit does not necessarily imply a waiver of immunity from all aspects of liability." *Shay* v. *Rossi*, supra, 253 Conn. 166–67.

We repeat the well established principle that "statutes in derogation of sovereign immunity should be strictly construed. . . . Where there is any doubt about their meaning or intent they are given the effect which makes the least rather than the most change in sovereign immunity." (Internal quotation marks omitted.) *DaimlerChrysler Corp.* v. *Law*, supra, 284 Conn. 712; see also *Columbia Air Services, Inc.* v. *Dept. of Transportation*, 293 Conn. 342, 350, 977 A.2d 636 (2009). We conclude that the legislature did not, either expressly or by force of a necessary implication, statutorily waive the state's sovereign immunity from liability for punitive damages under the fair employment act. See *Lyon* v. *Jones*, supra, 291 Conn. 397 ("a plaintiff seeking to circumvent the doctrine of sovereign immunity must show that . . . the legislature, either expressly or by force of a necessary implication, statutorily waived the state's sovereign immunity" [internal quotation marks omitted]). There is no express waiver of liability in §§ 46a-100 or 46a-104. Moreover, there is no *necessary* implication

---

[15] General Statutes § 46a-100 provides: "Any person who has timely filed a complaint with the [commission] in accordance with section 46a-82 and who has obtained a release from the commission in accordance with section 46a-83a or 46a-101, may also bring an action in the superior court for the judicial district in which the discriminatory practice is alleged to have occurred or in which the respondent transacts business, except any action involving a state agency or official may be brought in the superior court for the judicial district of Hartford."

that the defendant waived its immunity to liability for punitive damages. This conclusion is supported by the policy against finding the state liable for punitive damages.

This court previously has recognized the public policy against permitting punitive damages against the state. See *Hartford* v. *International Assn. of Firefighters, Local 760*, 49 Conn. App. 805, 817–18, 717 A.2d 258 ("[w]hile the public is benefited by the exaction of such damages against a malicious, willful or reckless wrong-doer, the benefit does not follow when the public itself is penalized for the acts of its agents over which it is able to exercise but little direct control" [internal quotation marks omitted]), cert. denied, 247 Conn. 920, 722 A.2d 809 (1998). In addition, the United States Supreme Court has held that punitive damages are unavailable against municipalities in actions brought pursuant to 42 U.S.C. § 1983. See *Newport* v. *Fact Concerts, Inc.*, 453 U.S. 247, 266–67, 101 S. Ct. 2748, 69 L. Ed. 2d 616 (1981) ("Punitive damages by definition are not intended to compensate the injured party, but rather to punish the tortfeasor whose wrongful action was intentional or malicious, and to deter him and others from similar extreme conduct. . . . Under ordinary principles of retribution, it is the wrongdoer himself who is made to suffer for his unlawful conduct. If a government official acts knowingly and maliciously to deprive others of their civil rights, he may become the appropriate object of the community's vindictive sentiments. . . . A municipality, however, can have no malice independent of the malice of its officials. Damages awarded for *punitive* purposes, therefore, are not sensibly assessed against the governmental entity itself." [Citations omitted; emphasis in original.]).

The court incorrectly concluded that sovereign immunity did not bar the plaintiff's request of punitive damages under § 46a-104.

The judgment is reversed and the case is remanded for further proceedings according to law.

In this opinion the other judges concurred.