PARAGON CONSTRUCTION COMPANY *v.*
DEPARTMENT OF PUBLIC
WORKS ET AL.
(AC 32073)

Robinson, Bear and Flynn, Js.

Argued April 11—officially released July 19, 2011

*Lawrence Russ,* assistant attorney general, with whom were *Drew S. Graham,* assistant attorney general, and, on the brief, *Richard Blumenthal,* former attorney general, for the appellants (defendants).

*Neal L. Moskow*, with whom, on the brief, were *Deborah M. Garskof* and *Stephanie Dellolio*, for the appellee (plaintiff).

*Opinion*

ROBINSON, J. The defendants, the department of public works and the department of correction, appeal from the judgment of the trial court denying their motion to dismiss part of the action of the plaintiff, Paragon Construction Company, which was based on the doctrine of sovereign immunity. On appeal, the defendants claim that the court improperly denied their motion to dismiss.[1] We affirm in part and reverse in part the judgment of the trial court.

The record reveals the following relevant facts and procedural history. The department of correction is the administrator of the Cheshire Correctional Center, and both the department of public works and the department of correction let out for bid and administered a project for renovation of the Cheshire Correctional Center. In July, 1999, the plaintiff entered into a public works contract with the department of public works pursuant to which the plaintiff was to act as the general contractor on the construction project at the Cheshire Correctional Center. Pursuant to the contract, the plaintiff agreed to provide services and materials for the construction project in return for the defendants' payment of the contract amount. Subsequently, the plaintiff entered into a subcontract with MacKenzie Painting Company (MacKenzie) pursuant to which MacKenzie agreed to "de-lead" and paint certain security bars on windows at the Cheshire Correctional Center. After substantial completion of the construction project, a dispute arose between the plaintiff and the defendants over payment for additional required work and delays.

---

[1] The denial of a motion to dismiss on the basis of sovereign immunity is an immediately appealable final judgment. See *Gold* v. *Rowland*, 296 Conn. 186, 190 n.4, 994 A.2d 106 (2010).

On December 2, 2005, the plaintiff filed a two count complaint against the defendants seeking to collect sums allegedly due for additional required work and delays. The first count alleged a claim of breach of contract, while the second count alleged a claim of unjust enrichment. Specifically, as to the first count, the plaintiff alleged breach of contract on two different grounds, the first being based on the allegation that the plaintiff was owed $178,312 for the "de-leading" of security bars on windows, as set forth in paragraph seven of count one of the complaint,[2] and the second being based on the allegation that the defendants caused construction delays and required additional work that damaged the plaintiff to the extent of $293,023.60, as set forth in paragraph eight of count one of the complaint.[3] The defendants did not seek to dismiss the portion of the breach of contract claim that alleged breach by construction delays and additional required work. In the second count, the plaintiff alleged that the defendants were unjustly enriched as a result of their failure to pay the plaintiff for the "de-leading" of the security bars and for the delays and other additional

[2] Paragraph seven of count one of the plaintiff's complaint specifically provides: "Despite substantial completion of its obligations under the [a]greement, [Cheshire Correctional Center] has failed to pay [the] [p]laintiff $178,312.00 for the de-leading of security bars on windows reflected on the July 8, 2003 invoice from MacKenzie Painting Company annexed [to the complaint] as [an exhibit] and made a part [thereof]." We note that the plaintiff also alleged that the department of correction is the administrator of the Cheshire Correctional Center. The parties and the trial court have not made a distinction between the defendants and the Cheshire Correctional Center. Accordingly, we assume without deciding that they are one and the same for purposes of this appeal.

[3] Paragraph eight of count one of the complaint specifically provides: "[T]here remains outstanding a request for an equitable adjustment to the contract price in accordance with the Eichlea Formula for delays and additional work required at the [Cheshire Correctional Center] . . . as a result of [the] de-leading as well as numerous other delays imposed on Paragon by [the defendants] in the amount of $293,023.60, all as set forth in [the] schedule prepared by Paragon, annexed [to the complaint] and made a part [thereof]."

work they had required, which caused the defendants to realize an unjust economic benefit of $471,335.60.[4]

On January 17, 2006, pursuant to Practice Book § 10-31 (a) (1), the defendants filed a motion to dismiss on the ground that the court lacked subject matter jurisdiction on the basis of the doctrine of sovereign immunity. Specifically, the defendants claimed that the doctrine of sovereign immunity barred the breach of contract claim because the plaintiff failed to allege a " 'disputed claim' " under a contract with the state, as required by the statutory waiver of immunity provided in General Statutes § 4-61 (a).[5] The defendants also claimed that the unjust enrichment claim, as set forth in count two, was barred because it failed to meet the requirements in § 4-61 (a) because "the services and merchandise that the [defendants] allegedly failed to compensate the

---

[4] The unjust enrichment count incorporated the allegations of the breach of contract count and also alleged in relevant part: "As a result of the foregoing, the [d]efendants . . . have been benefited in that [the] [p]laintiff has performed as contemplated by the parties and pursuant to the terms of the [c]ontract. . . . [T]he [p]laintiff has performed services and provided materials not contemplated by the [c]ontract and to the extent that the [d]efendants . . . have received such services and materials without compensating the [p]laintiff for same, they have been unjustly enriched. . . ."

[5] General Statutes § 4-61 (a) provides in relevant part: "Any person, firm or corporation which has entered into a contract with the state, acting through any of its departments, commissions or other agencies, for the design, construction, construction management, repair or alteration of any highway, bridge, building or other public works of the state or any political subdivision of the state may, in the event of any disputed claims under such contract or claims arising out of the awarding of a contract by the Commissioner of Public Works, bring an action against the state to the superior court for the judicial district of Hartford for the purpose of having such claims determined, provided notice of each such claim under such contract and the factual bases for each such claim shall have been given in writing to the agency head of the department administering the contract within the period which commences with the execution of the contract or the authorized commencement of work on the contract project, whichever is earlier, and which ends two years after the acceptance of the work by the agency head evidenced by a certificate of acceptance issued to the contractor or two years after the termination of the contract, whichever is earlier. . . ."

[p]laintiff for were 'not contemplated by the contract' . . . ." The court, *Hon. Jerry Wagner*, judge trial referee, having construed the allegations in a manner most favorable to the plaintiff, concluded that the allegations set forth in paragraph eight of the first count, which also was incorporated in the second count, sufficiently brought each count of the complaint within the requirements of § 4-61 (a) and, accordingly, denied the motion.[6]

Subsequently, through the discovery process, the defendants deposed both Albert Ridinger, the plaintiff's president, and Malcolm MacKenzie, MacKenzie's president. On December 21, 2009, the defendants filed a second motion to dismiss, this time purportedly supplemented by "undisputed facts" established by the deposition testimony. In their motion, the defendants asserted that the plaintiff's lack of compliance with the requirements of § 4-61 (a) deprived the court of subject matter jurisdiction over that portion of count one that alleged that the Cheshire Correctional Center[7] had failed to pay the plaintiff for the "de-leading" of the security bars and the entirety of count two.[8]

As to the portion of the breach of contract claim that alleges that the Cheshire Correctional Center had failed to pay the plaintiff for the "de-leading" of the security bars, the defendants argued, based on our Supreme Court's decision in *Federal Deposit Ins. Corp.* v. *Peabody, N.E., Inc.*, 239 Conn. 93, 680 A.2d 1321 (1996), that the allegations set forth in paragraph seven of count

---

[6] The record reveals that after the court denied the motion, the defendants filed a request to revise the plaintiff's complaint on March 14, 2007, which subsequently was denied. Additionally, the record reveals that the defendants filed a motion to strike on April 18, 2007, which also was denied.

[7] See footnote 2 of this opinion.

[8] The motion to dismiss contained two additional grounds, namely, that the plaintiffs should have sought authorization to sue from the claims commissioner and that the state would be harmed if the plaintiff was permitted to move forward with its claims. The plaintiff does not raise these grounds on appeal.

one were insufficient to meet the requirements of § 4-61 (a), because the plaintiff was required to allege either that it had paid MacKenzie $178,312 or to admit that it unconditionally was liable to MacKenzie for that amount and, therefore, was due payment from the defendants. In addition, the defendants argued that the deposition testimony of both Ridinger and Malcolm MacKenzie established that the plaintiff had not yet paid MacKenzie $178,312 or admitted that it unconditionally was liable to MacKenzie for that amount. As to the unjust enrichment claim, the defendants argued that, because the claim did not fall directly under the terms of the contract, it did not meet the requirements of § 4-61 (a).

On March 8, 2010, the court, *Peck, J.,* denied the second motion to dismiss for two reasons. First, the court concluded that the question of whether the claim asserting that the Cheshire Correctional Center had failed to pay the plaintiff for the "de-leading" of the security bars, as set forth in paragraph seven of the breach of contract claim, met the requirements of § 4-61 (a) was inherently fact bound and, consequently, was an issue to be resolved by a fact finder.[9] Second, the court concluded that because paragraph eight of count one and as incorporated into count two contained a viable claim for delay damages against the defendants, it could not dismiss the action. Subsequently, the defendants appealed.

As a preliminary matter, we set forth the standard of review. "[W]e have long recognized the validity of the common-law principle that the state cannot be sued without its consent . . . . Nevertheless, a plaintiff may

[9] With respect to this point, the court suggested that "the state does have an avenue here to seek to preclude those damages at the time of trial in the form of a motion in limine or . . . as a matter of evidence in the course of trial . . . ."

surmount this bar against suit if, inter alia, he can demonstrate that the legislature, either expressly or by force of a necessary implication, statutorily waived the state's sovereign immunity . . . . Even when there is an express statutory waiver of immunity, however, the plaintiff's complaint must allege a claim falling within the scope of that waiver. . . .

"Lack of a statutory waiver of immunity is a jurisdictional defect properly raised by a motion to dismiss. . . . A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the court's ultimate legal conclusion and resulting [determination] of the motion to dismiss will be de novo. . . . In undertaking this review, we are mindful of the well established notion that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged. . . .

"Trial courts addressing motions to dismiss for lack of subject matter jurisdiction pursuant to [Practice Book] § 10-31 (a) (1) may encounter different situations, depending on the status of the record in the case. As summarized by a federal court discussing motions brought pursuant to the analogous federal rule, [l]ack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. . . . Different rules and procedures will apply, depending on the state of the record at the time the motion is filed.

"When a trial court decides a jurisdictional question raised by a pretrial motion to dismiss on the basis of the complaint alone, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . .

"In contrast, if the complaint is supplemented by undisputed facts established by affidavits submitted in support of the motion to dismiss; Practice Book § 10-31 (a); other types of undisputed evidence; see, e.g., *Kozlowski* v. *Commissioner of Transportation*, [274 Conn. 497, 504 n.7, 876 A.2d 1148 (2005)] (photographs and deposition testimony); *Ferreira* v. *Pringle*, 255 Conn. 330, 336, 766 A.2d 400 (2001) (lease agreement); *Shay* v. *Rossi*, [253 Conn. 134, 139 n.7, 749 A.2d 1147 (2000)] (official records of department of children and families), [overruled in part on other grounds by *Miller* v. *Egan*, 265 Conn. 301, 325, 828 A.2d 549 (2003)]; and/ or public records of which judicial notice may be taken; *Cox* v. *Aiken*, [278 Conn. 204, 217, 897 A.2d 71 (2006)] (state employees' collective bargaining agreement); the trial court, in determining the jurisdictional issue, may consider these supplementary undisputed facts and need not conclusively presume the validity of the allegations of the complaint. . . . Rather, those allegations are tempered by the light shed on them by the [supplementary undisputed facts]. . . . If affidavits and/or other evidence submitted in support of a defendant's motion to dismiss conclusively establish that jurisdiction is lacking, and the plaintiff fails to undermine this conclusion with counteraffidavits; see Practice Book § 10-31 (b); or other evidence, the trial court may dismiss the action without further proceedings. . . . If, however, the defendant submits either no proof to rebut

the plaintiff's jurisdictional allegations . . . or only evidence that fails to call those allegations into question . . . the plaintiff need not supply counteraffidavits or other evidence to support the complaint, but may rest on the jurisdictional allegations therein. . . .

"Finally, where a jurisdictional determination is dependent on the resolution of a critical factual dispute, it cannot be decided on a motion to dismiss in the absence of an evidentiary hearing to establish jurisdictional facts. . . . Likewise, if the question of jurisdiction is intertwined with the merits of the case, a court cannot resolve the jurisdictional question without a hearing to evaluate those merits. . . . An evidentiary hearing is necessary because a court cannot make a critical factual [jurisdictional] finding based on memoranda and documents submitted by the parties." (Citations omitted; internal quotation marks omitted.) *Conboy* v. *State*, 292 Conn. 642, 649–54, 974 A.2d 669 (2009).

On appeal, the defendants claim that the court improperly denied their motion to dismiss because both the breach of contract claim alleging that the Cheshire Correctional Facility had failed to pay the plaintiff for the "de-leading" of the security bars, as asserted in paragraph seven of the first count, and the unjust enrichment claim asserted in the second count do not meet the statutory waiver of immunity requirements of § 4-61 (a). We address each claim in turn.

I

The defendants first claim that the breach of contract claim alleging that the Cheshire Correctional Facility had failed to pay the plaintiff for the "de-leading" of the security bars should be dismissed for lack of subject matter jurisdiction because it does not meet the waiver of immunity requirements set forth in § 4-61 (a). Specifically, the defendants argue that the allegations set forth

in paragraph seven of count one merely assert the claim of MacKenzie, a subcontractor, and fail to allege that the plaintiff itself has a " 'disputed claim' " under its contract with the state as is required by § 4-61 (a).[10] We disagree.

## A

"Sovereign immunity relates to a court's subject matter jurisdiction over a case, and therefore presents a question of law over which we exercise de novo review. . . . In so doing, we must decide whether [the trial court's] conclusions are legally and logically correct and find support in the facts that appear in the record. . . . The principle that the state cannot be sued without its consent, or sovereign immunity, is well established under our case law. . . . It has deep roots in this state and our legal system in general, finding its origin in ancient common law. . . . Not only have we recognized the state's immunity as an entity, but [w]e have also recognized that because the state can act only through its officers and agents, a suit against a state officer concerning a matter in which the officer represents the state is, in effect, against the state. . . . Exceptions to this doctrine are few and narrowly construed under our jurisprudence. . . .

"[T]he sovereign immunity enjoyed by the state is not absolute. There are [three] exceptions: (1) when the legislature, either expressly or by force of a necessary

[10] We note that the appellate courts of this state have ordered the dismissal of *portions of a count* of a complaint on the basis of sovereign immunity. See *Fetterman* v. *University of Connecticut*, 192 Conn. 539, 557, 473 A.2d 1176 (1984) (upholding trial court's dismissal of portions of counts contained in plaintiff's complaint on basis of sovereign immunity), superseded by statute on other grounds as stated in *Piteau* v. *Board of Education*, 300 Conn. 667, 680–81, 689, 15 A.3d 1067 (2011); *Ware* v. *State*, 118 Conn. App. 65, 80–81, 983 A.2d 853 (2009) (reversing trial court's judgment denying defendant's motion to dismiss portions of counts contained in plaintiff's complaint on basis of sovereign immunity).

implication, statutorily waives the state's sovereign immunity . . . (2) when an action seeks declaratory or injunctive relief on the basis of a substantial claim that the state or one of its officers has violated the plaintiff's constitutional rights . . . and (3) when an action seeks declaratory or injunctive relief on the basis of a substantial allegation of wrongful conduct to promote an illegal purpose in excess of the officer's statutory authority. . . . For a claim made pursuant to the first exception, this court has recognized the well established principle that statutes in derogation of sovereign immunity should be strictly construed. . . . Where there is any doubt about their meaning or intent they are given the effect which makes the least rather than the most change in sovereign immunity. . . . In the absence of a proper factual basis in the complaint to support the applicability of these exceptions, the granting of a motion to dismiss on sovereign immunity grounds is proper." (Citations omitted; internal quotation marks omitted.) *Columbia Air Services, Inc.* v. *Dept. of Transportation*, 293 Conn. 342, 349–50, 977 A.2d 636 (2009).

"Section 4-61 (a) waives sovereign immunity for any person, firm or corporation which has entered into a contract with the state . . . for the design, construction, construction management, repair or alteration of any highway, bridge, building or other public works of the state. . . . Such an entity may, in the event of any disputed claims under such contract . . . bring an action against the state . . . for the purpose of having such claims determined." (Internal quotation marks omitted.) *Federal Deposit Ins. Corp.* v. *Peabody, N.E., Inc.*, supra, 239 Conn. 101. Section 4-61 is the *sole* Connecticut statute that expressly waives sovereign immunity for specifically enumerated public works contract actions. *184 Windsor Avenue, LLC* v. *State*, 274 Conn. 302, 311, 875 A.2d 498 (2005). "Thus, a party who seeks

to litigate or arbitrate a disputed claim arising under a public works contract bears the burden of proving that the claim fits precisely within the narrowly drawn reach of § 4-61." *Dept. of Transportation* v. *White Oak Corp.*, 287 Conn. 1, 9, 946 A.2d 1219 (2008).

"Section 4-61 (a) expressly grants the right to sue the state only to contractors who have [(1)] 'entered into a contract with the state' and who have [(2)] a dispute 'under such contract.' Nowhere in § 4-61 or elsewhere in the General Statutes is there any provision that grants a subcontractor, who does not have a contract with the state, the right to sue the state." *Federal Deposit Ins. Corp.* v. *Peabody, N.E., Inc.*, supra, 239 Conn. 104. Here, there is no dispute that the plaintiff entered into a contract with the state, acting through the defendants, for a public works project. The parties' dispute related to the breach of contract claim centers only on whether the allegations in paragraph seven of the first count properly can be characterized as asserting a " 'disputed claim' " under the contract. Our analysis is guided by our Supreme Court's decision in *Federal Deposit Ins. Corp.*

In *Federal Deposit Ins. Corp.*, the issue presented on appeal was "whether a general contractor has a 'disputed [claim] under [its] contract' with the state, within the meaning of § 4-61 (a), if the general contractor's claim against the state takes the form of a claim for indemnification that is based upon the pending claim of a subcontractor." Id., 101. In that case, like the present one, only the general contractor had a contract with the state. Id., 102. The subcontractor "had no contract with the state and, therefore, could not sue the state directly." Id. Due to this fact, the subcontractor's successor in interest brought an action against the general contractor with whom the subcontractor did have a contract. Id. The court noted that "the only existing

'disputed claim' at [that] point . . . [was] between the general contractor and the subcontractor." Id.

Thereafter, the general contractor attempted to implead the state for indemnification because the subcontractor's claims for damages were based on the state's alleged failure to compensate the subcontractor properly. Id., 96. In its third party complaint, the general contractor denied liability to the subcontractor but alleged that, if it were found liable to the subcontractor, the department of transportation should be responsible for any judgment. Id., 97–98. The department of transportation moved to dismiss on the ground of sovereign immunity, claiming that its immunity was not waived because the third party complaint was not a "disputed claim" under the state contract for the purposes of § 4-61 (a). Id., 100.

Our Supreme Court agreed with the department of transportation: "[W]e are persuaded that a general contractor who has entered into a contract with the state cannot bring a third party action against the state based on the mere prospect that the contractor may be liable to a subcontractor at some point in the future. That scenario does not constitute a disputed claim by the contractor against the state." Id., 103. The court based its holding on the plain language of § 4-61 (a), specifically the language stating that a party seeking to sue the state must have " 'disputed claims' " under its contract with the state. Id., 102–103. The court concluded: "[A] contractor cannot implead the state in an action against the contractor by a subcontractor unless the contractor admits liability to the subcontractor and incorporates the subcontractor's claim into its own, so that the contractor then has a disputed claim under its own contract with the state." Id., 105.

The defendants contend that the holding in *Federal Deposit Ins. Corp.* is applicable to the facts of the present case. The plaintiff counters that that case is distinguishable factually from the present case because

*Federal Deposit Ins. Corp.* involved a subcontractor's action against a general contractor and a subsequent attempt by the general contractor to implead the state into that action for indemnification, while the present matter involves a direct action initially filed by a general contractor against the state. Furthermore, the plaintiff attempts to distinguish *Federal Deposit Ins. Corp.* on the ground that the contractor in that case denied liability to the subcontractor, while the plaintiff has made no such allegation here. Notwithstanding these factual distinctions, we find the reasoning in *Federal Deposit Ins. Corp.* pertinent to the present case.

## B

With these principles in mind, we turn to the defendants' claim that the breach of contract claim alleging that the Cheshire Correctional Facility had failed to pay the plaintiff for the "de-leading" of the security bars should be dismissed for lack of subject matter jurisdiction because the allegations in paragraph seven of count one are insufficient to meet the "disputed claim" requirement in § 4-61 (a). Paragraph seven of the first count of the complaint specifically provides: "Despite substantial completion of its obligations under the [a]greement, [Cheshire Correctional Center] *has failed to pay [the] [p]laintiff* $178,312.00 for the de-leading of security bars on windows reflected on the July 8, 2003 [i]nvoice from MacKenzie . . . annexed [to the complaint] as [an exhibit] . . . ." (Emphasis added.) From this allegation, it readily is apparent that the claim belongs to the plaintiff and clearly asserts that it is the plaintiff that is owed money. The fact that the plaintiff evidenced *its claim* with an invoice from MacKenzie does not mean necessarily, as the defendants suggest, that the claim belongs to MacKenzie. We conclude therefore that, on its face, when viewed in a light most favorable to the plaintiff, paragraph seven of count one

sufficiently alleges that the *plaintiff*, and not MacKenzie, has a disputed claim under its contract with the state.

Although the claim is sufficient on its face, the defendants contend, nonetheless, that the deposition testimony of Ridinger and Malcolm MacKenzie conclusively establish that the plaintiff has not paid MacKenzie in the amount of the invoice, nor has it admitted unconditional liability to MacKenzie for that amount. The defendants contend that these purportedly undisputed facts contradict the allegation in paragraph seven of count one that the claim belongs to the plaintiff. We conclude, however, that the testimony does not establish the undisputed fact that the plaintiff has not admitted unconditional liability to MacKenzie.

Specifically, when asked whether he was aware of any agreements, oral or written, between the plaintiff and MacKenzie wherein the plaintiff promised to pay MacKenzie for the performance of any additional work performed at Cheshire Correctional Center, Ridinger testified that, although there was no written admission of liability to MacKenzie for the $178,312, he had "an understanding with Malcolm [MacKenzie] that [they] were going to somehow compensate him" and that the plaintiff was "on the hook for what [MacKenzie] [had] performed as extra work." This testimony, at best, is equivocal as to the question of whether the plaintiff admitted that it was unconditionally liable to MacKenzie. Even if we were to assume that Ridinger's testimony established that he did not admit unconditional liability to MacKenzie, the testimony of Malcolm MacKenzie would contradict that testimony. When asked the same question, Malcolm MacKenzie testified that the plaintiff orally promised to pay MacKenzie the $178,312 "whether or not [the plaintiff] succeed[s] on this claim with the state . . . ." This testimony indicates that the plaintiff bound itself to an unconditional liability to pay

MacKenzie in the amount of $178,312. At the very least, there exists a factual dispute regarding the question of whether the plaintiff admitted unconditional liability to MacKenzie in the amount of $178,312. "[W]here a jurisdictional determination is dependent on the resolution of a critical factual dispute, it cannot be decided on a motion to dismiss in the absence of an evidentiary hearing to establish jurisdictional facts." *Conboy* v. *State*, supra, 292 Conn. 652. Because paragraph seven of count one, when viewed in a light most favorable to the plaintiff, sufficiently alleges on its face that the plaintiff has a disputed claim under its contract with the state, and because jurisdiction is dependent on the resolution of a critical factual dispute, we conclude that the court properly denied the defendants' motion to dismiss as to count one.

## II

The defendants next claim that count two of the complaint, sounding in unjust enrichment, should be dismissed for lack of subject matter jurisdiction because it does not meet the waiver of immunity requirements set forth in § 4-61 (a), such claim not being one that is brought "under" the contract with the state.

Whether the plaintiff's claim for unjust enrichment comes within the scope of § 4-61 is a question of statutory interpretation. "The process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of this case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement,

and to its relationship to existing legislation and common law principles governing the same general subject matter. . . .

"Our analysis is more specifically illuminated by the well settled principle that when the state waives sovereign immunity by statute a party attempting to sue under the legislative exception must come clearly within its provisions, because [s]tatutes in derogation of sovereignty should be strictly construed in favor of the state, so that its sovereignty may be upheld and not narrowed or destroyed . . . . Where there is any doubt about [the] meaning or intent [of a statute in derogation of sovereign immunity, it is] given the effect which makes the least rather than the most change in sovereign immunity. . . . The state's sovereign right not to be sued may be waived by the legislature, provided clear intention to that effect is disclosed by the use of express terms or by force of a necessary implication. . . . Thus, before bringing suit under a statutory waiver of sovereign immunity, [a] plaintiff must prove . . . that there is a precise fit between the narrowly drawn reach of the relevant statute . . . *and the contractual language upon which the plaintiff depends.*" (Citations omitted; emphasis added; internal quotation marks omitted.) *Dept. of Public Works* v. *ECAP Construction Co.*, 250 Conn. 553, 558–59, 737 A.2d 398 (1999).

We look first to the relevant language of § 4-61 (a), which provides in relevant part: "Any person, firm or corporation which has entered into a contract with the state . . . for the . . . repair or alteration of any . . . building or other public works of the state . . . may, in the event of any disputed claims *under* such contract . . . bring an action against the state to the superior court for the judicial district of Hartford for the purpose of having such claims determined . . . ." (Emphasis added.) Our Supreme Court specifically addressed the meaning of the term "under" in *Dept. of Public Works.*

In *Dept. of Public Works*, the department of public works (department) filed an action seeking a permanent injunction barring a contractor from arbitrating a claim against the department for breach of an agreement that purported to settle various claims that the contractor had against the department relating to a construction contract. *Dept. of Public Works* v. *ECAP Construction Co.*, supra, 250 Conn. 556. Specifically, the department claimed that the contractor's claim did not fall within the limited waiver of sovereign immunity contained in § 4-61 because the parties' disagreement over the settlement agreement "did not constitute a disputed claim arising 'under' the contract within the meaning of the statute." Id., 557. On appeal, the court agreed with the department and stated: "It is clear . . . that the parties' purported settlement agreement . . . constitutes a separate agreement that, although related to the [construction] contract, does not arise 'under' that contract." Id., 562. "The legislature's use of the word 'under' [in § 4-61 (a)], as opposed to a broader term such as 'related to,' 'connected with' or 'derived from,' indicates an intent to authorize only those disputed claims against the state that fall directly under the contract itself. To permit an action against the state for a claim that is related to or connected with a public works contract would expand the limited waiver of immunity inherent in § 4-61 beyond the statute's plain language. . . . We are not persuaded that the legislature intended such an expansion of § 4-61." Id., 559.

Guided by the decision in *Dept. of Public Works*, we conclude that the plaintiff's unjust enrichment claim does not fall *directly under* the contract. Paragraph fourteen of count two of the plaintiff's complaint alleges: "As a result of the foregoing, the [p]laintiff has performed services and provided materials *not contemplated by the* [c]ontract and to the extent that the [d]efendants . . . have received such services and

material without compensating the [p]laintiff for same, they have been unjustly enriched." (Emphasis added.) The stated basis of the unjust enrichment claim, therefore, is that the plaintiff performed services and provided materials that *were not contemplated* by the contract itself. The plaintiff contends, nevertheless, that the unjust enrichment claim properly is before the court because such claim "directly flow[s] from the contract and the work contemplated by the contract . . . ." As our Supreme Court in *Dept. of Public Works* noted, the claim must fall *directly under* the contract itself. *Dept. of Public Works* v. *ECAP Construction Co.*, supra, 250 Conn. 559. It is not enough that the conduct alleged flows from, relates to or is connected with the contract. Recognition of the plaintiff's unjust enrichment claim, which it specifically admits to be not contemplated by the contract, would "expand the limited waiver of immunity inherent in § 4-61 beyond the statute's plain language." Id. Accordingly, we conclude that the court incorrectly determined that sovereign immunity did not bar the plaintiff's unjust enrichment claim in count two.

The judgment denying the defendants' motion to dismiss count two of the plaintiff's complaint is reversed and the case is remanded with direction to grant the defendants' motion on that count and to render judgment thereon for the defendants. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.