******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

ALDIN ASSOCIATES LIMITED PARTNERSHIP *v.*
STATE OF CONNECTICUT ET AL.
(AC 44102)

Bright, C. J., and Moll and Harper, Js.

*Syllabus*

The plaintiff appealed from the judgment of the trial court granting the
motion to dismiss filed by the defendants, the state and the Commis-
sioner of Energy and Environmental Protection. The plaintiff owned
and operated more than five gasoline facilities that had underground
storage tanks used for petroleum products located on the premises and,
accordingly, was a responsible party and a mid-size station applicant
under the Act Concerning Underground Storage Tanks (§ 22a-449a et
seq.), which established a clean-up program to reimburse responsible
parties for costs incurred in remediating leaking underground storage
tanks. The plaintiff remediated some of its properties pursuant to the
act and submitted several applications to the Department of Energy
and Environmental Protection, seeking reimbursement for the costs it
incurred. At the time the plaintiff commenced this action, some of its
applications had been approved and paid, at least one had been approved
in 2009 but remained unpaid, and the commissioner had failed to act
on certain other applications. The plaintiff claimed that the commis-
sioner had unduly and unreasonably delayed the processing and payment
of its applications for reimbursement under the program and sought a
writ of mandamus ordering the commissioner to pay approved claims
and to adjudicate its pending claims. It also sought monetary damages
for the commissioner's failure to reimburse the plaintiff and to adminis-
ter the program within a reasonably timely manner and further claimed
that the failure to pay any approved applications and any pending appli-
cations that should have been approved violated the takings clause of
article first, § 11, of the Connecticut constitution. The defendants moved
to dismiss the action for lack of subject matter jurisdiction on the ground
that the plaintiff's claims were barred by sovereign immunity. *Held*:

1. The trial court erred by dismissing the plaintiff's request for a writ of
mandamus because such a request was not barred by sovereign immu-
nity: contrary to the defendants' claim, to the extent that there remained
applications for which the plaintiff had requested a hearing before the
commissioner, the plaintiff's mandamus claim was not moot because
those applications had not been finally adjudicated for purposes of filing
an appeal to the Superior Court under the applicable statute (§ 22a-
449g) and the trial court could grant the plaintiff practical relief by
ordering the defendants to hold hearings in accordance with the act
(§ 22a-449f (h)); moreover, this court determined that, in accordance
with our Supreme Court's decisions in *C. R. Klewin Northeast, LLC* v.
*Fleming* (284 Conn. 250) and *Gold* v. *Rowland* (296 Conn. 186), which
required claims for injunctive relief against the state to satisfy one of
the exceptions to the doctrine of sovereign immunity, there was no
categorical exception to sovereign immunity for applications for writs
of mandamus; furthermore, the trial court improperly determined that
the plaintiff's requests for mandamus relief had to rise and fall together
and, therefore, improperly dismissed the portion of the first count of
the complaint seeking a writ of mandamus to compel the defendants
to act on its pending applications, as established precedent confirmed
that a court may dismiss a portion of a count of a complaint on the
basis of sovereign immunity, our Supreme Court's decision in *Miller* v.
*Egan* (265 Conn. 301) determined that sovereign immunity will not bar
actions seeking declaratory or injunctive relief when the process of
statutory interpretation establishes that the state defendants acted
beyond their statutory authority, and the allegations in the plaintiff's
complaint averred that the defendants' failure to act on its pending
applications constituted actions in excess of the defendants' statutory
authority; additionally, the plaintiff's mandamus claim was not tanta-
mount to a claim for money damages, as the plaintiff was not seeking
compensatory damages for losses it suffered but, rather, sought to com-

pel the defendants to distribute funds to which the act entitled it, and the defendants' failure to pay the plaintiff's approved claim could constitute an act in excess of statutory authority because the act created a mandatory duty to pay approved applications, regardless of the fact that the statute did not specify a time period within which the payment must be made.

2. The trial court properly determined that the state had not waived its sovereign immunity under § 22a-449g and, accordingly, properly dismissed the counts of the plaintiff's complaint that sought monetary damages: the statutory authorization to appeal to the Superior Court from an adverse decision by the commissioner under § 22a-449g did not authorize an action for damages against the state; moreover, the plain language of § 22a-449g, which does not refer to a general cause of action against the state or to the defense of sovereign immunity, did not support the plaintiff's claim of implied waiver of sovereign immunity.

3. The trial court properly determined that the plaintiff had not alleged a property interest sufficient to support a finding of an unconstitutional taking under article first, § 11, of the state constitution: the plaintiff did not possess any of the incidents of ownership identified in *A. Gallo & Co.* v. *Commissioner of Environmental Protection* (309 Conn. 810), as it never possessed the money it claimed it was owed, and, therefore, could not use the money, earn income from it, or transfer it to another party; moreover, because the plaintiff had no control over the disputed funds, its interest in the money was not a vested property interest but, rather, a contingent or expectant interest.

Argued May 12, 2021—officially released January 11, 2022

*Procedural History*

Application for a writ of mandamus to compel the defendants to adjudicate and make payment on the plaintiff's claims in connection with the state's underground storage tank petroleum clean-up program, and for other relief, brought to the Superior Court in the judicial district of Hartford, where the court, *Hon. Robert B. Shapiro*, judge trial referee, granted the defendants' motion to dismiss and rendered judgment thereon, from which the plaintiff appealed to this court. *Reversed in part*; *further proceedings*.

*Richard P. Weinstein*, with whom was *Sarah Lingenheld*, for the appellant (plaintiff).

*Daniel M. Salton*, assistant attorney general, with whom, on the brief, were *William Tong*, attorney general, *Clare Kindall*, solicitor general, and *Matthew I. Levine*, deputy associate attorney general, for the appellees (defendants).

*Opinion*

MOLL, J. The plaintiff, Aldin Associates Limited Partnership, appeals from the judgment of the trial court granting the motion to dismiss filed by the defendants, the state of Connecticut and Katie Dykes, the Commissioner of Energy and Environmental Protection (commissioner), claiming that the plaintiff's action seeking a writ of mandamus and money damages was barred by sovereign immunity. On appeal, the plaintiff claims that the court improperly granted the motion to dismiss because (1) sovereign immunity does not bar its claim for mandamus relief, (2) the state either expressly or by force of a necessary implication waived its sovereign immunity under General Statutes § 22a-449g, and (3) the plaintiff alleged a property interest protected under the takings clause of the Connecticut constitution. We conclude that the plaintiff's mandamus claim is not barred by sovereign immunity and, accordingly, reverse in part the judgment of the court.

The following undisputed facts and procedural history are relevant to this appeal. In 1989, the General Assembly enacted legislation titled "An Act Concerning Underground Storage Tanks" (act), which established the underground storage tank petroleum clean-up fund (fund). See Public Acts 1989, No. 89-373 (P.A. 89-373), codified as amended at General Statutes (Rev. to 1991) § 22a-449a et seq. Initially, the act provided that the fund shall be credited one third of the tax imposed on gross earnings derived from the sale of petroleum products under General Statutes § 12-587 and that the fund is to be used by the commissioner to reimburse responsible parties for costs incurred in remediating leaking underground storage tanks.[1] See P.A. 89-373, §§ 3, 4 and 10. A responsible party could apply to the clean-up fund review board (board) for reimbursement from the fund. See P.A. 89-373, §§ 7 and 10.

The act was amended several times during the years following its enactment in 1989. In 1994, the legislature replaced the fund with the underground storage tank petroleum clean-up account (account). See Public Acts 1994, No. 94-130, § 6. In 2009, the General Assembly repealed General Statutes § 22a-449b, which required that a portion of tax revenue collected under § 12-587 be deposited in the account, and replaced the account with the underground storage tank petroleum clean-up program (program) to reimburse responsible parties "within available appropriations . . . ." Public Acts, Spec. Sess., June, 2009, No. 09-3, §§ 423 and 513, codified at General Statutes (Supp. 2010) § 22a-449c.

In 2012, the General Assembly replaced the board with the commissioner and cancelled the program. See Public Acts, Spec. Sess., June, 2012, No. 12-1, §§ 252 and 262, codified at General Statutes §§ 22a-449c and 22a-449s. General Statutes § 22a-449t established dead-

lines for applicants to apply for reimbursement under the program based on the applicant's status as a municipal, small station, mid-size station, large station, or other applicant. Section 261 of Public Act 12-1, which was codified at General Statutes (Rev. to 2013) § 22a-449r, established a reverse auction system. This system was applicable "to all applications submitted by mid-size or large station applicants before, on or after June 15, 2012, including, but not limited to, applications for which payment or reimbursement has been ordered by the commissioner but has not been made. . . ." General Statutes § 22a-449r (c) (2).

Under the reverse auction system, "priority for payment or reimbursement shall be given to those applicants who . . . agree to accept the greatest reduction in the amount ordered for payment or reimbursement by the commissioner under the program . . . ." General Statutes § 22a-449r (c) (4). Section 22a-449r (c) (2) (A) provides in relevant part: "In the fiscal year beginning July 1, 2012, no payment shall be made to mid-size station applicants in excess of thirty-five cents on each dollar the commissioner orders to be paid or reimbursed under the program. In the fiscal year beginning July 1, 2013, and each fiscal year thereafter, such amount shall increase by ten cents on each dollar per fiscal year and in such years no payment or reimbursement shall be made in excess of the amount in effect for such fiscal year. . . ."

The plaintiff owns and operates more than five gasoline facilities where underground storage tanks used for petroleum products are located and, therefore, is a responsible party and a mid-size station applicant under the act.[2] The plaintiff remediated some of its properties pursuant to the act and submitted several applications to the Department of Energy and Environmental Protection seeking reimbursement for the costs it incurred. At the time the plaintiff commenced this action, some of the plaintiff's applications had been approved and paid, at least one application had been approved in 2009 but remained unpaid, and the commissioner had failed to act on the plaintiff's remaining applications.

In 2019, the plaintiff brought this action against the defendants, claiming that the commissioner has unduly and unreasonably delayed the processing and payment of its applications for reimbursement under the program. In the first count of its complaint, the plaintiff sought a writ of mandamus ordering the commissioner "to pay approved claims and to adjudicate those pending claims [that] have not been adjudicated." In the second, fourth, and fifth counts, the plaintiff sought monetary damages on the basis of its allegations that the commissioner failed to reimburse it and failed to administer the program within a reasonably timely manner as required by the act (count two); violated the equal protection clause under article first, § 20, of the

Connecticut constitution (count four); and violated the due process clause under article first, § 10, of the Connecticut constitution (count five). In the third count, the plaintiff claimed that the failure to pay any approved but unpaid applications for reimbursement under the act, as well as any pending applications that should be approved, violated the takings clause of article first, § 11, of the Connecticut constitution.[3]

The defendants moved to dismiss the action for lack of subject matter jurisdiction on the ground that the plaintiff's claims were barred by sovereign immunity. The defendants argued that counts one, two, four, and five of the plaintiff's complaint are claims for money damages that are barred by sovereign immunity because there is no statutory waiver of sovereign immunity and because the plaintiff did not obtain permission from the claims commissioner to bring an action against the state. See General Statutes § 4-147 ("[a]ny person wishing to present a claim against the state shall file with the Office of the Claims Commissioner a notice of claim" requesting permission to sue state). The defendants noted that the plaintiff previously had filed a claim with the claims commissioner based on the same facts as those alleged in the present action and that the claims commissioner denied the claim. As to the third count of the complaint, the defendants claimed that the plaintiff failed to allege a property interest sufficient to support its takings claim.

The plaintiff filed an objection to the motion to dismiss, along with an affidavit of Mark R. Temple, a licensed environmental professional who had prepared and filed applications for reimbursement on behalf of the plaintiff. The plaintiff argued that sovereign immunity does not bar its mandamus and takings claims and that the state waived its sovereign immunity pursuant to § 22a-449g, which provides that any applicant aggrieved by a decision of the commissioner may appeal to the Superior Court. In the affidavit, Temple asserted that the plaintiff elected to receive 95 percent reimbursement of its approved claims in August, 2018, and that there are available appropriations from which the defendants should pay the plaintiff.

After a hearing, the court granted the defendants' motion to dismiss. The court determined that there was no statutory waiver of sovereign immunity, although it analyzed General Statutes § 22a-449f (g), rather than § 22a-449g as relied on by the plaintiff. Accordingly, the court dismissed the second, fourth, and fifth counts of the complaint seeking monetary damages. The court then addressed the first count of the complaint seeking a writ of mandamus, considering separately the plaintiff's requests for relief in that count. The court determined that the plaintiff's request to compel the commissioner to adjudicate all pending applications satisfied the exception to sovereign immunity for actions by state

officers in excess of their statutory authority. The court reasoned that § 22a-449f (h) imposes a mandatory duty on the commissioner to "render a decision as to whether . . . to order payment or reimbursement from the program not more than ninety days after receipt of an application . . . ." General Statutes § 22a-449f (h). The court, however, determined that the request to compel the commissioner to pay the plaintiff's approved 2009 application is barred by sovereign immunity because the act does not impose a duty on the commissioner to pay approved applications within a specific time frame. The court concluded that, although a portion of the first count is not barred by sovereign immunity, the plaintiff's requests for mandamus "must rise and fall together." Accordingly, the court dismissed the first count in its entirety. Finally, the court determined that the third count, alleging an unconstitutional taking, was barred by sovereign immunity because the plaintiff failed to allege a protected property interest under the takings clause. This appeal followed. Additional facts and procedural history will be set forth as necessary.

On appeal, the plaintiff claims that the court erred by dismissing its request for a writ of mandamus on the ground of sovereign immunity because sovereign immunity does not bar a request for mandamus relief. The plaintiff further claims that, even if sovereign immunity applied to mandamus actions, the court erred in dismissing its first, second, fourth, and fifth counts because the state either expressly or by force of a necessary implication waived its sovereign immunity under § 22a-449g. Finally, the plaintiff claims that it properly alleged a property interest protected under the takings clause of the Connecticut constitution. We address each claim in turn.

We begin by setting forth our standard of review and the relevant legal principles regarding sovereign immunity. "A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the court's ultimate legal conclusion and resulting [determination] of the motion to dismiss will be de novo. . . . When a . . . court decides a jurisdictional question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . The motion to dismiss . . . admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone." (Internal quotation marks omitted.) *Carter* v. *Watson*, 181 Conn. App. 637, 641, 187 A.3d 478 (2018). "Sovereign immunity relates to a court's subject matter jurisdiction over a case, and therefore presents a question of law over which we exercise de novo review. . . .

"The principle that the state cannot be sued without its consent, or sovereign immunity, is well established under our case law. . . . It has deep roots in this state and our legal system in general, finding its origin in ancient common law. . . . Not only have we recognized the state's immunity as an entity, but [w]e have also recognized that because the state can act only through its officers and agents, a suit against a state officer concerning a matter in which the officer represents the state is, in effect, against the state. . . . Exceptions to this doctrine are few and narrowly construed under our jurisprudence." (Citations omitted; internal quotation marks omitted.) *C. R. Klewin Northeast, LLC* v. *Fleming*, 284 Conn. 250, 257–58, 932 A.2d 1053 (2007) (*Klewin*).

"Our Supreme Court has recognized three exceptions to sovereign immunity: (1) when the legislature, either expressly or by force of a necessary implication, statutorily waives the state's sovereign immunity . . . (2) when an action seeks declaratory or injunctive relief on the basis of a substantial claim that the state or one of its officers has violated the plaintiff's constitutional rights . . . and (3) when an action seeks declaratory or injunctive relief on the basis of a substantial allegation of wrongful conduct to promote an illegal purpose in excess of the officer's statutory authority. . . . In the absence of a proper factual basis in the complaint to support the applicability of these exceptions, the granting of a motion to dismiss on sovereign immunity grounds is proper." (Citation omitted; internal quotation marks omitted.) *Braham* v. *Newbould*, 160 Conn. App. 294, 310–11, 124 A.3d 977 (2015).

I

We first address whether the first count of the plaintiff's complaint seeking a writ of mandamus to compel the defendants to pay its approved 2009 application and to adjudicate those pending applications that have not been adjudicated is barred by sovereign immunity. The following additional facts and procedural history are relevant to this claim.

As previously noted in this opinion, the court separately addressed the plaintiff's requests for relief in the first count of its complaint and concluded that only the plaintiff's request to pay the approved application was barred by sovereign immunity. The court nevertheless dismissed the first count in its entirety, noting that "there is a dearth of decisional authority permitting the court to grant or deny a motion to dismiss part of a single count . . . ." After oral argument before this court, we ordered the parties to file supplemental briefs addressing whether the court properly dismissed the first count of the plaintiff's complaint in its entirety notwithstanding its conclusion that the portion of the plaintiff's mandamus count seeking to compel the com-

missioner to adjudicate its pending applications is not barred by sovereign immunity. See *Paragon Construction Co.* v. *Dept. of Public Works*, 130 Conn. App. 211, 221 n.10, 23 A.3d 732 (2011).

In *Paragon Construction Co.*, this court noted "that the appellate courts of this state have ordered the dismissal of *portions of a count* of a complaint on the basis of sovereign immunity. See *Fetterman* v. *University of Connecticut*, 192 Conn. 539, 557, 473 A.2d 1176 (1984) (upholding trial court's dismissal of portions of counts contained in plaintiff's complaint on basis of sovereign immunity), superseded by statute on other grounds as stated in *Piteau* v. *Board of Education*, 300 Conn. 667, 680–81, 689, 15 A.3d 1067 (2011); *Ware* v. *State*, 118 Conn. App. 65, 80–81, 983 A.2d 853 (2009) (reversing trial court's judgment denying defendant's motion to dismiss portions of counts contained in plaintiff's complaint on basis of sovereign immunity)." (Emphasis in original.) *Paragon Construction Co.* v. *Dept. of Public Works*, supra, 130 Conn. App. 221 n.10.

After the parties filed their supplemental briefs, the defendants moved for permission to file a supplemental brief regarding whether the portion of the plaintiff's mandamus count seeking to compel the adjudication of all pending applications is moot. The defendants claimed that, because the commissioner recently had adjudicated all of the plaintiff's pending applications, this portion of the plaintiff's mandamus count is moot. The plaintiff filed an opposition to the defendants' motion, claiming that one application had not been adjudicated and that the mandamus claim is not moot because the plaintiff has the right to request a hearing before the commissioner relating to those applications on which the commissioner rendered an initial decision. We granted the defendants' motion and ordered the parties to file supplemental briefs regarding the mootness issue. Accordingly, we first consider whether the plaintiff's mandamus claim is moot.

A

In their second supplemental brief, the defendants claimed that all of the plaintiff's pending applications had been adjudicated and argued that, "[b]ecause there is no practical relief able to be granted to the plaintiff, the court should conclude that the issue over the trial court's dismissal of said mandamus is now moot, and thus decline to review that claim." In its response, the plaintiff acknowledged that the commissioner had issued decisions on all of its pending applications but argued that the mandamus claim is not moot as to nine of those applications because the plaintiff has requested hearings on those decisions pursuant to § 22a-449f (h). The plaintiff concedes that the portion of its mandamus count seeking to compel the defendants to adjudicate its pending applications is moot as to the remaining applications for which it has not requested a hearing.

We conclude that, to the extent there remain applications for which the plaintiff has requested a hearing, the plaintiff's mandamus claim is not moot.

"Mootness implicates [this] court's subject matter jurisdiction and is thus a threshold matter for us to resolve. . . . It is a [well settled] general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . An actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal. . . . When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot." (Internal quotation marks omitted.) *Burbank* v. *Board of Education*, 299 Conn. 833, 839, 11 A.3d 658 (2011).

In the present case, the plaintiff sought a writ of mandamus ordering the defendants "to adjudicate those pending claims [that] have not been adjudicated." The defendants claim that, for mootness purposes, they have adjudicated all pending applications notwithstanding the plaintiff's right to seek a hearing before the commissioner on those decisions pursuant to § 22a-449f (h). We disagree.

Section 22a-449f (h) provides in relevant part: "The commissioner shall render a decision as to whether . . . to order payment or reimbursement from the program not more than ninety days after receipt of an application . . . . Any person aggrieved by the decision of the commissioner may, not later than twenty days after the date of issuance of such decision, request a hearing before the commissioner in accordance with the provisions of [the Uniform Administrative Procedure Act]. After such hearing, the commissioner shall consider the information submitted and affirm or modify the decision on the application. . . ." Under § 22a-449g, "[a]ny person aggrieved by a decision of the commissioner *after a hearing* pursuant to subsection (h) of section 22a-449f may appeal from such decision to the superior court for the judicial district of New Britain within twenty days after the issuance of such decision. . . ." (Emphasis added.)

As § 22a-449g makes clear, an applicant may appeal to the Superior Court *after* a hearing under § 22a-449f (h). The plaintiff sought the adjudication of its pending applications, which we construe to include the final adjudication of those applications for purposes of exercising the plaintiff's statutory right to bring an administrative appeal from the commissioner's decision. Accordingly, because certain of the plaintiff's applications have not been finally adjudicated for purposes of

filing an appeal to the Superior Court under § 22a-449g, the trial court could grant the plaintiff practical relief by ordering the defendants to hold hearings in accordance with § 22a-449f (h). Thus, because practical relief could follow if we conclude that the court erred in dismissing the portion of the plaintiff's mandamus claim seeking the adjudication of its pending applications, we conclude that this portion of the plaintiff's mandamus claim is not moot as to those applications for which the plaintiff has requested a hearing pursuant to § 22a-449f (h).

B

Having determined that the plaintiff's mandamus claim seeking to compel the defendants to act on its pending applications is not moot, we now consider the plaintiff's claim that sovereign immunity does not bar an application for a writ of mandamus. Specifically, the plaintiff claims that no exception to sovereign immunity is required for a writ of mandamus because "a mandamus action seeks performance of an act mandated by legislation and therefore no such waiver is required." The defendants claim that there is no categorical exception to sovereign immunity for applications for writs of mandamus. We agree with the defendants.

It is well settled that "[m]andamus is an extraordinary remedy, available in limited circumstances for limited purposes. . . . It is fundamental that the issuance of the writ rests in the discretion of the court, not an arbitrary discretion exercised as a result of caprice but a sound discretion exercised in accordance with recognized principles of law. . . . That discretion will be exercised in favor of issuing the writ only where the plaintiff has a clear legal right to have done that which he seeks. . . . The writ is proper only when (1) the law imposes on the party against whom the writ would run a duty the performance of which is mandatory and not discretionary; (2) the party applying for the writ has a clear legal right to have the duty performed; and (3) there is no other specific adequate remedy." (Internal quotation marks omitted.) *Miles* v. *Foley*, 253 Conn. 381, 391, 752 A.2d 503 (2000).

In support of its claim that a mandamus action is exempt from sovereign immunity, the plaintiff cites *State ex rel. Adams* v. *Crawford*, 99 Conn. 378, 382–83, 121 A. 800 (1923) (*Adams*), in which our Supreme Court explained that, "because the [s]tate is interested in compelling its agents to obey its commands, it is well settled that mandamus will lie to compel the payment of money by public officials when the duty to pay it is plain and the claim is just, undisputed in amount, and based on a clear legal right." The defendants claim that *Adams* does not support the plaintiff's claim because (1) it was decided eighty years before our Supreme Court held in *Miller* v. *Egan*, 265 Conn. 301, 321, 828 A.2d 549 (2003), that the exception to sovereign immunity for actions in excess of statutory authority does not apply to actions

seeking monetary damages, and (2) *Adams* did not discuss sovereign immunity. We agree that *Adams* does not stand for the proposition that sovereign immunity is inapplicable as a matter of law to a request for mandamus relief.

In *Miller*, our Supreme Court explained that, "[i]n the absence of legislative authority . . . we have declined to permit any monetary award against the state or its officials. . . . We have excepted declaratory and injunctive relief from the sovereign immunity doctrine on the ground that a court may fashion these remedies in such a manner as to minimize disruption of government and to afford an opportunity for voluntary compliance with the judgment. . . .

"When sovereign immunity has not been waived, the claims commissioner is authorized by statute to hear monetary claims against the state and determine whether the claimant has a cognizable claim. See General Statutes §§ 4-141 through 4-165b. . . . This legislation expressly bars suits upon claims cognizable by the claims commissioner except as he may authorize, an indication of the legislative determination to preserve sovereign immunity as a defense to monetary claims against the state not sanctioned by the [claims] commissioner or other statutory provisions. . . .

"The legislative history and purpose of chapter 53 of the General Statutes; General Statutes §§ 4-141 through 4-165[c]; entitled Claims Against the State, as well as the comprehensive nature of the statutory scheme, support our conclusion that, on a claim for money damages, regardless of whether the plaintiffs have alleged that state officers acted in excess of statutory authority, the plaintiffs must seek a waiver from the claims commissioner before bringing an action against the state in the Superior Court. The [O]ffice of the [C]laims [C]ommissioner was created by Public Acts 1959, No. 685. Prior to 1959, a claimant who sought to sue the state for monetary damages, in the absence of a statutory waiver by the state, had but one remedy—namely, to seek relief from the legislature, either in the form of a monetary award or permission to sue the state." (Citations omitted; internal quotation marks omitted.) *Miller* v. *Egan*, supra, 265 Conn. 316–18.

"Thus, the comprehensive nature of the statutory scheme, which specifies in detail under what circumstances a plaintiff may bring an action against employees individually, as well as when a plaintiff must seek the authorization of the claims commissioner before proceeding against the state, is consistent with the rule we have established through our case law. That rule is that the exception to sovereign immunity for actions in excess of statutory authority or pursuant to an unconstitutional statute, applies only to actions seeking declaratory or injunctive relief, not to those seeking monetary damages." Id., 320–21.

After *Miller* was decided, our Supreme Court considered whether an application for a writ of mandamus was barred by sovereign immunity in *C. R. Klewin Northeast, LLC* v. *Fleming*, supra, 284 Conn. 250. In *Klewin*, the plaintiff entered into a contract with the Department of Public Works, and issues arose over extra costs. Id., 253–54. The parties reached a settlement providing that the state would pay $1.2 million to the plaintiff, and the governor authorized the Department of Public Works to settle the plaintiff's claim in that amount. Id., 254. After the plaintiff had not received payment, it brought an action against the defendants, the Commissioner of Public Works, the governor, and the state comptroller seeking a writ of mandamus to compel the defendants to comply with the settlement. Id. The trial court rendered summary judgment in favor of the plaintiff, concluding that the plaintiff was entitled to mandamus relief because the governor's formal approval of the settlement established the plaintiff's legal right to payment and because the defendants had a mandatory duty to pay the plaintiff pursuant to the governor's authorization. Id., 256.

On appeal to our Supreme Court, the defendants claimed, inter alia, that "the plaintiff's action [was] barred by the doctrine of sovereign immunity because (a) the action is tantamount to an action for money damages, and (b) the defendants did not act in excess of any statutory duty under [General Statutes] § 3-7 (c) so as to except them from the protections of sovereign immunity . . . ." Id., 257. Our Supreme Court noted that "[t]he parties' briefs . . . address the issue of sovereign immunity primarily in the context of the questions of whether mandamus relief generally, and mandamus relief to enforce a settlement agreement specifically, constitute the type of equitable relief that falls within the exception to sovereign immunity. . . . Because we conclude that the dispositive question is whether § 3-7 (c) imposed a mandatory duty to pay the plaintiff the $1.2 million under the settlement agreement, such that the failure to do so could constitute an act in excess of statutory authority, we consider the parties' arguments only as they bear on this issue." Id., 260 n.7. The court determined that § 3-7 (c) did not create a mandatory duty in a department official to pay the amount due under the settlement agreement and, therefore, held that the defendants did not act in excess of their statutory authority in failing to do so. Id., 267. Accordingly, the court did not determine that a request for mandamus relief is categorically exempt from the doctrine of sovereign immunity.

In addition, in *Gold* v. *Rowland*, 296 Conn. 186, 214, 994 A.2d 106 (2010), our Supreme Court rejected a claim similar to the plaintiff's claim in the present case. In *Gold*, the plaintiff claimed that the exception to sovereign immunity for actions in excess of statutory author-

ity "may be applied to all claims of injunctive relief, regardless of whether the state has acted in excess of its statutory authority or pursuant to an unconstitutional statute." Id. In rejecting that claim, the court stated: "The plaintiff has not cited . . . and our research has not revealed, any case in which this court has concluded that a claim for injunctive relief that did not involve conduct by the state in excess of its statutory authority or pursuant to an unconstitutional statute was not barred by sovereign immunity. Indeed, the cases are to the contrary. See, e.g., *C. R. Klewin Northeast, LLC* v. *Fleming*, [supra, 284 Conn. 259–67] (mandamus action in which plaintiff sought order requiring state to pay plaintiff pursuant to settlement agreement did not come within 'in excess of statutory authority' exception to sovereign immunity in absence of statute requiring state to implement settlement agreements); *Alter & Associates, LLC* v. *Lantz*, 90 Conn. App. 15, 22–23, 876 A.2d 1204 (2005) (alleged failure of state to honor regulation concerning obligations to contract bidders, without more, did not meet 'in excess of statutory authority' exception to sovereign immunity doctrine for equitable claims)." *Gold* v. *Rowland*, supra, 213–14.

Thus, in *Klewin* and *Gold*, our Supreme Court determined that claims for injunctive relief against the state must satisfy one of the exceptions to the doctrine of sovereign immunity. Accordingly, in light of our Supreme Court's reasoning in *Klewin* and *Gold*, we reject the plaintiff's claim that sovereign immunity does not apply to an application for a writ of mandamus.[4]

C

We next consider whether the court properly dismissed the portion of the plaintiff's mandamus claim seeking to compel the defendants to adjudicate its pending applications for reimbursement.

In dismissing the first count of the complaint in its entirety, as all parties now acknowledge, the court overlooked precedent establishing that a court may dismiss only a portion of a count of a complaint on the basis of sovereign immunity. See *Paragon Construction Co.* v. *Dept. of Public Works*, supra, 130 Conn. App. 221 n.10 ("appellate courts of this state have ordered the dismissal of *portions of a count* of a complaint on the basis of sovereign immunity" (emphasis in original)). Accordingly, the court improperly determined that the plaintiff's requests for relief in the first count of its complaint must rise and fall together and, therefore, improperly dismissed the portion of the first count seeking a writ of mandamus to compel the defendants to act on its pending applications.

In their first supplemental brief, the defendants claimed that, although the court had the authority to dismiss a portion of a single count on the basis of sovereign immunity, the court erred in concluding that

the exception to sovereign immunity for actions by a state official in excess of his or her statutory authority applied to the plaintiff's mandamus claim. The defendants argue that, in analyzing this exception, the court erred by failing to address whether the plaintiff's complaint included allegations of wrongful conduct for an illegal purpose. We are not persuaded.

In its complaint, the plaintiff alleged that "[t]he applicable statutes compel the commissioner . . . to act upon said applications, but notwithstanding that said applications were submitted years ago, the commissioner and her predecessor [have] failed to act upon said applications . . . ." In its memorandum of decision, the court noted that "the plaintiff has not explicitly alleged in its complaint that a state official has acted in excess of its statutory authority . . . . Nonetheless, the plaintiff has alleged that the [act] compels the defendants to act upon the plaintiff's applications for reimbursement and that their failure to do so may only be remedied with a writ of mandamus. . . . Since the court, in deciding a motion to dismiss, must consider the allegations in their most favorable light, it is evident that the plaintiff profess[es] to claim breaches of the statutory obligations of the commissioner that are in excess of the defendants' statutory authority." (Citations omitted; internal quotation marks omitted.)

In support of their argument that the plaintiff was required to allege that the defendants acted solely to further their own illegal scheme and not to carry out government policy, the defendants cite our Supreme Court's decision in *Shay* v. *Rossi*, 253 Conn. 134, 170–72, 749 A.2d 1147 (2000), overruled in part by *Miller* v. *Egan*, 265 Conn. 301, 325, 828 A.2d 549 (2003), in which the court considered the contours of the exception for acts in excess of an official's statutory authority. In *Shay*, the court noted that case law from other jurisdictions "suggest[ed] that all it takes to trigger the doctrine is to establish, by a process of statutory interpretation, that the defendants' conduct was unauthorized." Id., 171. The court explained that it disagreed with such a suggestion because "the doctrine of sovereign immunity would be too easily overcome. It would mean, for example, that any tort committed by a state official would not be subject to sovereign immunity, because it could hardly be contended that any such official was statutorily authorized to commit a tort." Id., 172.

In *Miller* v. *Egan*, supra, 265 Conn. 321, however, our Supreme Court held "that the exception to sovereign immunity for actions in excess of statutory authority or pursuant to an unconstitutional statute, applies only to actions seeking declaratory or injunctive relief, not to those seeking monetary damages." Thus, *Miller* overruled *Shay* insofar as the court in *Shay* had held "that sovereign immunity does not bar monetary damages actions against state officials acting in excess of their

statutory authority." Id., 325. The court in *Miller* explained that "[t]he primary reason that we declined to adopt the broader definition of the exception [in *Shay*] was our concern that if we did so, the exception to sovereign immunity would . . . swallow the rule . . . and the doctrine of sovereign immunity would be too easily overcome. . . . [T]he concerns we expressed in *Shay* no longer exist. That is, because the exception is limited to actions seeking declaratory or injunctive relief, it is sufficiently narrow and there is simply no danger that the exception will swallow the rule. Therefore, we now conclude that when a process of statutory interpretation establishes that the state officials acted beyond their authority, sovereign immunity does not bar an action seeking declaratory or injunctive relief." (Citations omitted; internal quotation marks omitted.) Id., 326–27.

In light of our Supreme Court's conclusion in *Miller* that sovereign immunity will not bar actions seeking declaratory or injunctive relief when the process of statutory interpretation establishes that the state defendants acted beyond their statutory authority, the defendants' argument regarding the absence of allegations of wrongful conduct for an illegal purpose is unavailing. Accordingly, we agree with the court that, when considered in their most favorable light, the allegations in the plaintiff's complaint averred that the defendants' failure to act on its pending applications constituted actions in excess of the defendants' statutory authority. Therefore, the court properly considered this exception to sovereign immunity and determined that sovereign immunity does not bar this portion of the plaintiff's mandamus claim.

D

With respect to the portion of the plaintiff's mandamus claim seeking an order requiring the payment of its approved 2009 application, we first address the defendants' argument that such claim ultimately seeks monetary relief and, therefore, should be treated as a claim for money damages pursuant to this court's decision in *Bloom* v. *Dept. of Labor*, 93 Conn. App. 37, 41, 888 A.2d 115, cert. denied, 277 Conn. 912, 894 A.2d 992 (2006). The plaintiff claims that *Bloom* is distinguishable because it did not involve a writ of mandamus and argues that this court's discussion regarding sovereign immunity in *Bloom* was dicta.

In *Bloom*, the plaintiff applied for unemployment compensation benefits after his employment was terminated, and the administrator of the Unemployment Compensation Act (administrator) denied the application. Id., 38. The administrator's decision was affirmed by an appeals referee and by the board of review. Id. The plaintiff then filed an administrative appeal in the Superior Court, and the court dismissed the appeal. Id. Approximately one year after the dismissal of his

administrative appeal, the plaintiff filed an action against the Department of Labor, seeking an order compelling the department to hold a new hearing on his unemployment claim. Id., 38–39. The Department of Labor moved to dismiss the action on the grounds of sovereign immunity and the plaintiff's failure to appeal from the trial court's decision dismissing his administrative appeal. Id., 38. The court denied the motion to dismiss, and the Department of Labor appealed. Id., 39.

On appeal, this court agreed with the defendant that the plaintiff's failure to appeal from the trial court's decision dismissing his administrative appeal concluded his cause of action for unemployment benefits. Id., 39. The court then noted that "[t]he plaintiff cannot overcome the state's sovereign immunity by bringing an identical claim arising from the same underlying proceeding under the guise of a declaratory judgment. . . . The mere framing of the complaint as one for declaratory judgment does not, in and of itself, make it so. . . . Notwithstanding the plaintiff's claims that he is looking only to protect his reputation and not to collect money damages, in his complaint for relief he seeks a mandatory injunction ordering a new unemployment hearing, the purpose of which is to collect damages in the form of unemployment benefits. Therefore, because the plaintiff's claim ultimately is an action for money damages, the doctrine of sovereign immunity bars his action." (Citations omitted.) Id., 41.

In the present case, the court rejected the defendants' claim that the plaintiff's application for a writ of mandamus is tantamount to a claim for money damages, concluding that, "[u]nlike the plaintiff in *Bloom*, who was clearly seeking money damages after having exhausted the bulk of his administrative remedies, the plaintiff here is attempting to obtain an initial decision by the agency, which may or may not lead to reimbursement. . . . Moreover, [t]he fact that a judicial remedy may require one party to pay money to another is not sufficient reason to characterize the relief as money damages." (Citation omitted; internal quotation marks omitted.)

We agree with the plaintiff that *Bloom* is distinguishable from the present case. The plaintiff in *Bloom* sought to get a second bite at the proverbial apple after he failed to appeal from the dismissal of his administrative appeal, whereas the plaintiff in the present case has not been able to pursue his administrative remedies. Moreover, the plaintiff in the present case seeks to compel the defendants to act in accordance with their statutory duties, whereas the plaintiff in *Bloom* sought to compel the Department of Labor to hold a new hearing on his unemployment claim, which was not provided for by statute.

In addition, we conclude that the plaintiff's mandamus claim is not tantamount to a claim for money dam-

ages. The United States Supreme Court has explained: "Our cases have long recognized the distinction between an action at law for damages—which are intended to provide a victim with monetary compensation for an injury to his person, property, or reputation—and an equitable action for specific relief—which may include an order providing for the reinstatement of an employee with backpay, or for the recovery of specific property or monies, ejectment from land, or injunction either directing or restraining the defendant officer's actions. . . . The fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as money damages." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *Bowen* v. *Massachusetts*, 487 U.S. 879, 893, 108 S. Ct. 2722, 101 L. Ed. 2d 749 (1988).

"The term money damages . . . normally refers to a sum of money used as compensatory relief. Damages are given to the plaintiff to substitute for a suffered loss, whereas specific remedies are not substitute remedies at all, but attempt to give the plaintiff the very thing to which he was entitled." (Citation omitted; emphasis omitted; internal quotation marks omitted.) Id., 895.

In *Bowen*, the court held that "[t]he [s]tate's suit to enforce [42 U.S.C.] § 1396b (a) of the Medicaid Act, which provides that the [s]ecretary 'shall pay' certain amounts for appropriate Medicaid services, is not a suit seeking money in *compensation* for the damage sustained by the failure of the [f]ederal [g]overnment to pay as mandated; rather, it is a suit seeking to enforce the statutory mandate itself, which happens to be one for the payment of money. The fact that the mandate is one for the payment of money must not be confused with the question whether such payment, in these circumstances, is a payment of money as damages or as specific relief." (Emphasis in original; footnote omitted.) Id., 900–901.

Likewise, in the present case, the plaintiff is not seeking compensatory damages for losses it suffered but, rather, seeks funds to which the act entitles it. Thus, we conclude that the plaintiff's mandamus claim is not tantamount to a claim for money damages.

E

Finally, we consider whether the court properly concluded that, because the act does not impose a duty to pay approved applications within a specific time period, the defendants' failure to reimburse the plaintiff is not an act in excess of their statutory authority.[5]

The construction of a statute is a question of law subject to de novo review. See *C. R. Klewin Northeast, LLC* v. *Fleming*, supra, 284 Conn. 260. "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature.

. . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and [common-law] principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) Id., 261.

The plaintiff argues that, although the court properly held that the defendants were under a statutory duty to pay the approved 2009 application, it improperly determined that, because the statute did not require that the defendants reimburse applicants within a particular time period, their failure to pay the plaintiff's approved claim does not constitute an act in excess of statutory authority. We agree.

As previously noted in this opinion, the court determined that the plaintiff's request to compel the commissioner to adjudicate all pending applications satisfied the exception to sovereign immunity for actions by state officers in excess of their statutory authority because § 22a-449f (h) imposes a mandatory duty on the commissioner to "render a decision as to whether . . . to order payment or reimbursement from the program not more than ninety days after receipt of an application . . . ." The court, however, determined that the request to compel the commissioner to pay the plaintiff's approved 2009 application is barred by sovereign immunity because the act does not impose a duty on the commissioner to pay approved applications within a specific time frame.

"The test to be applied in determining whether a statute is mandatory or directory is whether the prescribed mode of action is the essence of the thing to be accomplished, or in other words, whether it relates to a matter of substance or a matter of convenience. . . . If it is a matter of substance, the statutory provision is mandatory. . . . If, however, the . . . provision is designed to secure order, system and dispatch in the proceedings, it is generally held to be directory . . . . Definitive words, such as must or shall, ordinarily express legislative mandates of nondirectory nature. . . . As we recently noted, the word shall creates a mandatory duty when it is juxtaposed with [a]

substantive action verb." (Internal quotation marks omitted.) *State* v. *Reddy*, 135 Conn. App. 65, 72, 42 A.3d 406 (2012).

Section 22a-449c (a) (2) provides in relevant part that "[t]he program shall provide money for reimbursement or payment pursuant to this section . . . within available appropriations, to responsible parties . . . ." Section 22a-449f (c) provides in relevant part that "[t]he commissioner *shall order reimbursement or payment* from the program for any cost paid or incurred, as the case may be, [if all of the conditions for reimbursement are satisfied] . . . ." (Emphasis added.) In the event that an applicant files an administrative appeal from the commissioner's decision pursuant to § 22a-449g, "any portion of the ordered reimbursement or payment that is approved and not the subject of such appeal, *shall be paid* by the commissioner, within available appropriations and subject to the provisions of section 22a-449r, notwithstanding the pendency of the appeal." (Emphasis added.) General Statutes § 22a-449g.

Section 22a-449r (a) (1) establishes the order of priority for payments from the program and directs that "any amount available for purposes of paying applicants under the underground storage tank clean-up program *shall be distributed* as follows: (A) [o]ne-quarter for payment or reimbursement to municipal applicants and other applicants; (B) one-quarter for payment or reimbursement to small station applicants; (C) one-quarter for payment or reimbursement to mid-size station applicants; and (D) one-quarter for payment or reimbursement to large station applicants. If at any time there is an amount remaining in one such category and if in such category there are no pending applications or applications for which payment or reimbursement has been ordered by the commissioner but has not been made . . . then such amount *shall be redistributed* for payment or reimbursement in the following order of priority: (i) [f]irst to municipal applicants and other applicants, (ii) if after redistribution pursuant to subclause (i) of this subdivision there is an amount remaining, then to small station applicants, (iii) if after redistribution pursuant to subclauses (i) and (ii) of this subdivision there is an amount remaining, then to mid-size station applicants, and (iv) if after redistribution pursuant to subclauses (i), (ii) and (iii) of this subdivision there is an amount remaining, then to large station applicants." (Emphasis added.)

Section 22a-449r (c) (2) (A) provides in relevant part: "In the fiscal year beginning July 1, 2012, no payment shall be made to mid-size station applicants in excess of thirty-five cents on each dollar the commissioner orders to be paid or reimbursed under the program. In the fiscal year beginning July 1, 2013, and each fiscal year thereafter, such amount shall increase by ten cents on each dollar per fiscal year and in such years no

payment or reimbursement shall be made in excess of the amount in effect for such fiscal year. After such amount reaches one dollar, it shall no longer increase. . . ."

Section 22a-449r (c) (4) provides in relevant part: "Among mid-size station applicants . . . priority for payment or reimbursement shall be given to those applicants who . . . agree to accept the greatest reduction in the amount ordered for payment or reimbursement by the commissioner under the program, provided such payment shall not exceed the amount set forth in subparagraph (A) or (B) of subdivision (2) of this subsection, as applicable. . . . If there are insufficient funds to satisfy payment and reimbursement of mid-size and large station applicants, the prioritization established pursuant to this subsection shall carry over to the subsequent fiscal quarter, and if necessary, from year to year, provided such prioritization may change based upon a subsequent reduced payment election submitted pursuant to subparagraph (A) (ii) of subdivision (3) of this subsection."

We conclude that the relevant statutes are plain and unambiguous and create a mandatory duty to pay approved applications pursuant to the act. In the act, the word "shall" is juxtaposed with the substantive action verb "paid" when describing the commissioner's role under the act. See *State* v. *Reddy*, supra, 135 Conn. App. 72 ("the word shall creates a mandatory duty when it is juxtaposed with [a] substantive action verb" (internal quotation marks omitted)); cf. *C. R. Klewin Northeast, LLC* v. *Fleming*, supra, 284 Conn. 263 (determining that statutory language " 'shall constitute sufficient authority . . . to pay' " did not create mandatory duty because " 'shall' " was "not juxtaposed with the substantive action verb"). Section 22a-449g expressly provides that "any portion of the ordered reimbursement or payment that is approved and not the subject of such appeal, *shall be paid* by the commissioner, within available appropriations and subject to the provisions of section 22a-449r, notwithstanding the pendency of the appeal." (Emphasis added.) Accordingly, we conclude that the act imposes a mandatory duty on the defendants to pay the approved 2009 application.

We further conclude that the court improperly determined that, in the absence of any requirement that the payment be made in a specific time period, the defendants' failure to do so could not be an act in excess of statutory authority. The act requires that approved applications for reimbursement be paid if certain conditions are met. General Statutes § 22a-449f (c). If those conditions are met, the fact that the statute does not specify a specific time period within which payment must be made does not affect the mandatory nature of the duty to pay. Indeed, § 22a-449r (a) (1) expressly provides that "any amount available for purposes of

paying applicants under the underground storage tank clean-up program *shall be distributed* . . . .” (Emphasis added.) Thus, if, as the plaintiff alleges, there are funds available for purposes of paying the plaintiff, the act imposes a mandatory duty on the defendants to pay the plaintiff. Accordingly, the first count of the plaintiff's complaint seeking a writ of mandamus ordering the defendants to pay its approved application is not barred by sovereign immunity.[6]

## II

We next address the plaintiff's claim that the legislature, through § 22a-449g, waived the state's sovereign immunity. The plaintiff notes that the court analyzed § 22a-449f (g), rather than § 22a-449g, and argues that § 22a-449g, either expressly or by force of a necessary implication, waives the state's sovereign immunity. The defendants respond that the statutory authorization to appeal to the Superior Court from an adverse decision by the commissioner under § 22a-449g does not authorize an action for damages against the state. We agree with the defendants.

Whether § 22a-449g either expressly or by force of a necessary implication waives the state's sovereign immunity presents a question of statutory interpretation over which we exercise plenary review. See *Ware* v. *State*, supra, 118 Conn. App. 87. It is well established “that statutes in derogation of sovereign immunity should be strictly construed. . . . Where there is any doubt about their meaning or intent they are given the effect which makes the least rather than the most change in sovereign immunity.” (Internal quotation marks omitted.) *C. R. Klewin Northeast, LLC* v. *Fleming*, supra, 284 Conn. 259.

Section 22a-449g provides: “Any person aggrieved by a decision of the commissioner after a hearing pursuant to subsection (h) of section 22a-449f may appeal from such decision to the superior court for the judicial district of New Britain within twenty days after the issuance of such decision. Such appeal shall be in accordance with [the Uniform Administrative Procedure Act, General Statutes § 4-166 et seq.]. All such appeals shall be heard by the court without a jury, and shall have precedence in the order of trial as provided in section 52-192. If an appeal is taken pursuant to this section, any portion of the ordered reimbursement or payment that is approved and not the subject of such appeal, shall be paid by the commissioner, within available appropriations and subject to the provisions of section 22a-449r, notwithstanding the pendency of the appeal.”

We conclude that the legislature did not expressly waive the state's sovereign immunity by providing applicants under the act the right to bring an administrative appeal. When the legislature intends to waive the state's sovereign immunity expressly, it knows how to do so.

For example, the legislature has waived the state's sovereign immunity with respect to contracts "for the design, construction, construction management, repair or alteration of any highway, bridge, building or other public works of the state . . . ." General Statutes § 4-61 (a). Section 4-61 (a) provides in relevant part that any person who has a claim arising under such a contract with the state may "bring an action against the state to the superior court for the judicial district of Hartford for the purpose of having such claims determined . . . . All legal defenses except governmental immunity shall be reserved to the state."

The express waiver in § 4-61 (a) provides in relevant part that an individual may "bring an action against the state" and specifically prohibits the state from asserting the defense of "governmental immunity . . . ." In contrast, § 22a-449g simply provides an applicant under the act the right to appeal from an adverse decision by the commissioner to the Superior Court pursuant to the Uniform Administrative Procedure Act. Section 22a-449g does not refer to a general cause of action against the state or to the defense of sovereign immunity. Thus, contrary to the plaintiff's contention, § 22a-449g does not expressly waive the state's sovereign immunity.

Section 22a-449g also does not waive sovereign immunity by force of a necessary implication. As our Supreme Court has explained, "in order for statutory language to give rise to a necessary implication that the state has waived its sovereign immunity, [t]he probability . . . must be apparent, and not a mere matter of conjecture; but . . . necessarily such that from the words employed *an intention to the contrary cannot be supposed.* . . . In other words, in order for a court to conclude that a statute waives sovereign immunity by force of necessary implication, it is not sufficient that the claimed waiver *reasonably* may be implied from the statutory language. It must, by logical necessity, be the *only possible interpretation* of the language." (Citation omitted; emphasis in original; footnote omitted; internal quotation marks omitted.) *Envirotest Systems Corp.* v. *Commissioner of Motor Vehicles*, 293 Conn. 382, 388–90, 978 A.2d 49 (2009).

The plaintiff argues that § 22a-449g "expressly authorized applicants, such as [the plaintiff], to bring a lawsuit in the Superior Court. . . . The purpose of that lawsuit would be to consider whether the amount ordered by the commissioner is correct, or incorrect, and thus authorizes a suit against the state to determine liability. . . . Even if this court believes it is not express, it certainly waives the state's sovereign immunity by force of a necessary implication." (Citation omitted.)

Section 22a-449g authorizes an applicant to appeal to the Superior Court pursuant to the Uniform Administrative Procedure Act. Significantly, it does not autho-

rize an applicant to "bring a lawsuit in the Superior Court." The plaintiff essentially argues that, because an administrative appeal challenging the commissioner's final decision would require the court to consider the amount of money to be paid to the applicant, it necessarily follows that the state has waived its sovereign immunity for purposes of permitting damages claims to be brought against it relating to applications under the act. That conclusion, however, is not a necessary one. As our Supreme Court emphasized, "it is not sufficient that the claimed waiver *reasonably* may be implied from the statutory language. It must, by logical necessity, be the *only possible interpretation* of the language." (Emphasis in original.) *Envirotest Systems Corp.* v. *Commissioner of Motor Vehicles*, supra, 293 Conn. 389–90. Simply put, the plain language of the statute, which authorizes an applicant aggrieved by the commissioner's decision to file an administrative appeal, does not support the plaintiff's claim of an implied waiver of sovereign immunity. Mindful that statutes in derogation of sovereign immunity must be strictly construed, we conclude that the only possible interpretation of § 22a-449g is that an applicant may bring an administrative appeal to challenge an adverse decision by the commissioner. Accordingly, the court properly determined that the state had not waived its sovereign immunity under the act and, therefore, properly dismissed the second, fourth, and fifth counts of the plaintiff's complaint.

### III

Last, the plaintiff claims that the court improperly dismissed the third count of its complaint asserting a violation of the takings clause of the Connecticut constitution. The plaintiff argues that it has a constitutionally protected property interest in the payment of its approved 2009 application.[7] We are not persuaded.

Article first, § 11, of the Connecticut constitution provides that "[t]he property of no person shall be taken for public use, without just compensation therefor." "[M]oney is certainly property . . . . In order to state a claim under the takings clause, however, a plaintiff first must establish that he or she possesses a constitutionally protected interest in the disputed property. . . . Because the [c]onstitution protects rather than creates property interests, the existence of a property interest is determined by reference to existing rules or understandings that stem from an independent source such as state law. . . . As a consequence, [w]hether one's interest or entitlement rises to the level of a protected property right depends upon the extent to which one has been made secure by [s]tate or [f]ederal law in its enjoyment. . . . For a property right to be considered vested, in contrast to one that is expectant or contingent, it must function as a present interest." (Citations omitted; internal quotation marks omitted.) *A. Gallo & Co.* v. *Commissioner of Environmental Protec-*

*tion*, 309 Conn. 810, 824–25, 73 A.3d 693 (2013) (*Gallo*), cert. denied, 572 U.S. 1028, 134 S. Ct. 1540, 188 L. Ed. 2d 581 (2014).

In *Gallo*, twelve beer and soft drink distributors brought an action against the then Commissioner of Environmental Protection seeking a declaratory judgment and damages for the "retroactive taking of their property under certain provisions of Public Acts 2009, No. 09-1, § 15 (P.A. 09-1) . . . ." Id., 812–13. By statute, the plaintiffs were required to collect a five cent refund value on each beverage container sold to a retailer and to reimburse the retailer when the empty container was returned. Id., 814–15. The plaintiffs were required "to open a special interest-bearing account" and to deposit in the account the amount of the refund values for each container sold. (Internal quotation marks omitted.) Id., 816. "All interest, dividends and returns earned on the special account were required to be paid into such account, and such moneys were required to be kept separate and apart from all other moneys in the possession [of] the [plaintiffs]." (Internal quotation marks omitted.) Id., 816–17. The plaintiffs were required to pay any reimbursement of the refund value from that account. Id., 817. Public Act 09-1, which was made applicable for a period of four months prior to its effective date from December 1, 2008, through March 31, 2009, "provided that all unclaimed [beverage container] deposits accruing during the designated four month period, which previously had been retained by the plaintiffs, henceforth must be paid to the state." Id., 813 and n.3. The trial court rendered judgment for the plaintiffs, concluding that the retroactive provision of P.A. 09-1 "requiring the plaintiffs to pay to the state any unclaimed deposits and accrued interest from December 1, 2008, through March 31, 2009, was a taking of their property without just compensation . . . ." Id., 820.

On appeal, our Supreme Court "look[ed] for incidents of ownership to determine whether the plaintiffs had a property interest in the unclaimed deposits that warranted constitutional protection. Incidents of ownership include (1) the right to use the property . . . (2) the right to earn income from the property and to contract over its terms with other individuals . . . and (3) the right to dispose of, or transfer, ownership rights permanently to another party." (Citations omitted.) Id., 838. The court concluded "that the plaintiffs had no property interest in the unclaimed deposits because their right to use and control the deposits was severely limited . . . . [A]lthough the act did not address disposition of the unclaimed deposits, it stated in specific terms how such funds were to be managed, including that they were to be deposited in a special interest bearing account at the Connecticut branch of a financial institution. Even more significant, the [statute] contained no provision allowing the unclaimed deposits to be withdrawn by the distributors. In short, the [statute]

did not allow the distributors to withdraw or control the funds placed in the special accounts beyond the parameters established by the . . . provisions [of P.A. 09-1]. Thus, the distributors had no property interest in the unclaimed deposits because they possessed none of the normal incidents of ownership." Id., 838–39.

In the present case, the plaintiff argues that it "has incidents of ownership evincing a property interest in the amounts due [to the plaintiff] pursuant to the [act]. [The plaintiff] has an unequivocal right to the money and the statute places no restrictions on [the plaintiff's] ability to use the money." The defendants respond that "the plaintiff has no more than a future interest in payment of the approved application, because as the plaintiff alleges, the approval has not yet been acted upon by the state." We agree with the defendants.

Although the plaintiff asserts that it has a vested property interest in the approved payment, the plaintiff acknowledges that it "cannot use the money, or earn interest" because the defendants have not paid the plaintiff. Thus, despite the plaintiff's bare assertion to the contrary, it does not possess any of the incidents of ownership identified in *Gallo*. Indeed, the plaintiff never possessed the money it claims it is owed, and, therefore, it could not use the money, earn income from the money, or transfer the money to another party. Given that our Supreme Court held that the plaintiffs in *Gallo* did not possess any incidents of ownership in funds that they maintained in their individual bank accounts, we are unable to conclude that the plaintiff in the present case possesses any incidents of ownership when the plaintiff has no control over the disputed funds. Consequently, the plaintiff's interest in the money is not a vested property interest but, rather, a contingent or expectant interest. Accordingly, the trial court properly determined that the plaintiff had not alleged a property interest sufficient to support a finding of an unconstitutional taking.

The judgment is reversed as to the first count of the plaintiff's complaint seeking a writ of mandamus, and the case is remanded for further proceedings on that count only; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] A responsible party is "any person who . . . at any time owns, leases, uses or has an interest in the real property on which an underground storage tank system is or was located from which there is or has been a release or suspected release, regardless of when the release or suspected release occurred, or whether such person owned, leased, used or had an interest in the real property at the time the release or suspected release occurred, or whether such person owned, operated, leased or used the underground storage tank system from which the release or suspected release occurred . . . ." General Statutes § 22a-449a (3) (B).

[2] General Statutes § 22a-449a (10) defines " '[m]id-size station applicant' " as "an applicant who owned, operated, leased, used, or had an interest in, at the time such applicant's first application was received by the underground storage tank petroleum clean-up program, six to ninety-nine separate parcels of real property, within or outside of the state, on which an underground

storage tank system was or had been previously located  . . . ."

[3] Article first, § 11, of the Connecticut constitution provides: "The property of no person shall be taken for public use, without just compensation therefor."

[4] Nevertheless, as noted by the court in *Klewin*, "one of the requirements for a writ of mandamus is a 'mandatory' duty imposed by law  . . . and therefore, there is some overlap in [the] determination as to whether [a statute] creates a mandatory duty both to the applicability of the sovereign immunity exception in *Miller* v. *Egan*, supra, 265 Conn. 314, for actions against a state officer for conduct in excess of statutory authority, and one prong of the test for mandamus actions." (Citation omitted.) *C. R. Klewin Northeast*, *LLC* v. *Fleming*, supra, 284 Conn. 262 n.8. Consequently, in an action for a writ of mandamus against the state, a plaintiff necessarily would have to establish that the third exception to sovereign immunity applies in order to prevail on the merits of a mandamus claim seeking the performance of a mandatory duty. That is, a plaintiff would have to establish that the state official has a mandatory statutory duty and that the official is acting in excess of his or her statutory authority by failing to comply with that duty.

[5] The plaintiff also claims that the court erred by applying the current version of the act in dismissing the first count of its complaint, arguing that "there is no clear and unequivocal indication that the legislature intended to retroactively apply the changes to § 22a-449c [and] § 22a-449f." We disagree.

"Whether to apply [an act] retroactively or prospectively depends upon the intent of the legislature  . . . . [There is a presumption of] legislative intent that statutes affecting substantive rights shall apply prospectively only. . . . This presumption in favor of prospective applicability, however, may be rebutted when the legislature clearly and unequivocally expresses its intent that the legislation shall apply retrospectively." (Internal quotation marks omitted.) *State* v. *Nowell*, 262 Conn. 686, 702, 817 A.2d 76 (2003).

In the present case, the legislature clearly and unequivocally expressed its intent that the amendments to the act regarding the payment of claims be given retrospective effect. Section 22a-449r established the reverse auction system for the payment of claims under the program and specifies that, "[n]otwithstanding the provisions of sections 22a-449a to 22a-449i, inclusive . . . payment or reimbursement to mid-size station applicants  . . . under the program shall be in accordance with this subsection  . . . . The provisions of this subsection shall create a reverse auction system, and shall apply to all applications submitted by mid-size or large station applicants *before, on or after June 15, 2012, including . . . applications for which payment or reimbursement has been ordered by the commissioner but has not been made. . . .*" (Emphasis added.) General Statutes § 22a-449r (c).

Accordingly, because § 22a-449r applies to all applications submitted before, on, or after June 15, 2012, the current version of the act applies to the plaintiff's mandamus claims.

[6] Because we conclude that the plaintiff's mandamus claim is not barred by sovereign immunity, we need not address the plaintiff's claim that the court erred by dismissing the mandamus count without allowing jurisdictional discovery regarding whether there are "available appropriations" for the defendants to reimburse the plaintiff under the act.

[7] Although the plaintiff initially averred that the defendants' failure to pay any approved but unpaid applications for reimbursement under the act, as well as any pending applications that should be approved, violated the takings clause, at oral argument before this court, the plaintiff's counsel clarified that the takings claim involved only the failure to pay the approved 2009 application.